Argued and submitted July 15, accused suspended for 60 days October 26, 1982

In re: Complaint as to the Conduct of

# HAROLD ADAMS,
*Accused.*

(OSB 79-26, SC 28540)

652 P2d 787

Asa L. Lewelling, Salem, argued the cause and submitted the brief for the accused.

Dean M. Quick, Albany, argued the cause for the Oregon State Bar. With him on the brief was Weatherford, Thompson, Brickey & Powers, P.C.

PER CURIAM

## PER CURIAM

The Oregon State Bar filed a complaint against Harold W. Adams accusing him of unethical conduct in four separate causes:

(1) Charging an excessive fee in violation of the standards of professional conduct. DR 2-106(A).[1]

(2) Filing in his own name a suit for a declaratory judgment seeking to set aside a Workers' Compensation Board order to the prejudice or damage of his client in violation of DR 7-101(A)(3).[2]

(3) Filing in his own name, in a separate action, a counterclaim against the same client seeking damages for mental anguish caused by the client's reporting him to the Oregon State Bar. Filing the counterclaim was alleged to be in violation of DR 7-101(A)(3) and ORS 9.460(3).

(4) That the conduct and course of conduct alleged in the first three causes, taken in the aggregate, were prejudicial to the administration of justice in violation of DR 1-102(A)(5).[3]

The Trial Board found Adams not guilty of all four causes of action and recommended that the complaint be dismissed.

The Disciplinary Review Board found Adams guilty of the first cause and not guilty of the second cause. On the third cause the Review Board found Adams guilty of violating ORS 9.460(3), but not guilty of DR 7-101(A)(3).

---

[1]

"DR 2-106 Fees for Legal Services.

"(A) A lawyer shall not enter into an agreement for, charge or collect an illegal or clearly excessive fee."

[2]

"DR 7-101 Representing a Client Zealously.

"(A) A lawyer shall not intentionally:

"(3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7-102(B).

[3]

"DR 1-102 Misconduct.

"(A) A Lawyer shall not:

"(5) Engage in conduct that is prejudicial to the administration of justice."

The Review Board recommended that the fourth cause be dismissed because it was not set out substantially in the form required by Section 17 of the Oregon State Bar Rules of Procedure.[4] It also recommended that Adams be suspended from the practice of law for a period of 30 days and that he "be required to refund to his former client * * * any sums not ultimately approved in the Workers' Compensation claim * * *."

Two members of the six member Disciplinary Review Board filed a separate concurring and dissenting opinion. In it they concurred with the majority's opinion in all respects except that they would find Adams guilty of the second cause of complaint.

We find Adams guilty of the first three causes of complaint and order that he be suspended from the practice of law in this state for a period of 60 days.

All four causes of complaint result from Adams' representation of William R. Whitt. In August, 1970 Whitt fell 14 feet from a scaffold to the ground injuring his back and left shoulder. Thereafter, Whitt employed Adams to represent him in connection with his Workers' Compensation claim. At first Whitt received an award of permanent partial disability, and in January, 1975, he was awarded

---

[4]

"Section 17. Form of Formal Complaint in Disciplinary Proceedings. (Effective September 21, 1976) A complaint in a disciplinary proceeding shall be in substantially the following form:

* * * *

"The aforesaid conduct and course of conduct of the Accused, alleged hereinabove in causes first to and including ___ of this complaint, taken in the aggregate, was and is detrimental and prejudicial to the honor, integrity and standing of the profession of lawyer, the practice of law and the administration of justice in this state and was and is subversive to the public interest; it constituted and constitutes conduct rendering the Accused unfit to practice law in this state; and it was and is such conduct, in breach of the standards and rules of professional conduct established by law and by the Oregon State Bar, that, if the Accused were now applying for admission to practice law in this state, or for admission to the Oregon State Bar, his application should be denied." (Underscoring added.)

The above underscored portions of Section 17 were omitted from the fourth cause of complaint. The phrase "in violation of Disciplinary Rule 1-102(A)(5);" was added following the words "prejudicial to the administration of justice in this state."

permanent total disability. Transamerica Insurance Group was the employer's insurance carrier.

On December 29, 1977, the employer requested the Workers' Compensation Board to hold a hearing to determine if Whitt was still permanently and totally disabled. In early January, 1978, Whitt again contacted Adams to represent him. At that time Whitt resided in Salem where Adams had his law office. Adams was concerned that Whitt might be required to carry the burden of proof that he was still permanently and totally disabled because of changes in the Workers' Compensation laws by the legislature in 1977. Adams discussed with Whitt the possibility of bringing a class action to challenge the 1977 statutory amendments. Adams discussed the question of attorney fees generally with Whitt and Whitt's wife, but they executed no written agreement and Adams gave no statement for fees to Whitt.

On May 3, 1978, Adams filed a declaratory judgment suit "to test" the 1977 amendments by the legislature to the Workers' Compensation law affecting individuals receiving permanent total disability awards. It was a class action in which Whitt and five other individuals were named as parties plaintiff. The defendants were described in the body of the complaint as the President of the Oregon State Senate, the Speaker of the House of Representatives, the Governor of the State of Oregon, the Chairman of the Workers' Compensation Board, two additional members of the Workers' Compensation Board, and the Director of the Workers' Compensation Department. This class action was referred to in the proceedings before the Trial Board as *Whitt v. Boe.*

After considerable negotiations between Adams and the attorney for Transamerica, a referee for the Workers' Compensation Board, on June 12, 1978, approved a "bona fide dispute" settlement wherein Transamerica was required to pay Whitt the sum of $27,500[5] as "full and final payment" for his injury.

---

[5] The joint petition of the parties recited that a bona fide dispute existed because one medical doctor was of the opinion that Whitt was "capable of physically performing work of a sedentary nature" while another doctor said that Whitt was "totally disabled and unable to work."

On June 27, 1978, Transamerica forwarded to Adams a draft payable jointly to himself and Whitt. Adams had Whitt endorse the draft and delivered to Whitt his trustee check in the amount of $20,725. That amount was computed by subtracting $6,875 (25 percent of the settlement which Adams claimed as attorney fees) from $27,500. Later in the same day, Whitt's wife contacted Adams to complain about the amount of the attorney fees. It was her understanding that Whitt was to receive $25,000 from Transamerica and that the excess ($2,500) was to be paid to Adams as his fee. On July 7, 1978, Whitt cashed Adams' trustee check.

On August 11, 1978, the Workers' Compensation Board by an "Own Motion Order" pursuant to ORS 656.278 set aside the approval by the referee on June 12, 1978 of the "bona fide dispute" settlement between Whitt and Transamerica. The Board concluded that the instrument submitted by the parties for approval was "nothing more than a compromise and release and is prohibited by the provisions of ORS 656.236."

In early August, 1978, Whitt hired an attorney in Albany to represent him. On August 29, 1978, the Albany attorney wrote to Adams demanding the refund of the "all attorney fees received pursuant to the disputed claim settlement." On September 6, 1978, Adams replied that he took the position "that the 25 percent was a reasonable fee and that I am entitled to a reasonable fee."

On December 1, 1978, Adams filed a declaratory judgment suit in which he challenged the Workers' Compensation Board order of August 11, 1978 vacating the disputed claim settlement. Adams was the plaintiff and Whitt and Transamerica were named in the suit as defendants. The Court of Appeals found that Adams lacked standing to bring the declaratory judgment suit and dismissed it. *Adams v. Transamerica Insurance,* 45 Or App 769, 609 P2d 834 (1980).

Transamerica filed an action in the Marion County Circuit Court against both Adams and Whitt to recover the attorney fees kept by Adams in the amount of $6,875. On January 30, 1981, Adams, acting as his own attorney, cross-claimed against Whitt seeking $2,500 damages and

attorney fees in the amount of $3,000. Adams alleged that because Whitt had initiated a "fruitless" complaint against him with the Oregon State Bar, he had been subjected to "substantial mental anguish and expenditure of time." On June 2, 1981, Adams' counsel amended the answer and eliminated the cross-claim against Whitt.

The record in this case does not disclose the ultimate disposition of the class action suit of *Whitt v. Boe* filed by Adams on behalf of Whitt and others to test the 1977 amendments to the Workers' Compensation law. We also do not know the final disposition of the action filed by Transamerica against Whitt and Adams to recover the $6,875 retained by Adams as attorney fees.

In the first cause the Oregon State Bar alleges that Adams charged Whitt an excessive fee in violation of DR 2-106(A) because the Oregon Administrative Rule in effect at that time allowed a fee of only $3,950, so that $2,925 of the $6,875 fee charged was in excess. Adams agrees that the administrative rules in effect at that time provided for an attorney fee of $3,950 on a disputed claim settlement of $27,500, but contends that he did substantial additional work for Whitt which justified the additional fee.

The Trial Board found that Adams did in fact do additional work and that Whitt by accepting and negotiating the trust account check agreed to the amount of the fee and the manner of its payment. On the other hand, the Disciplinary Review Board found that the "evidence does not support a finding that the fee collected by [Adams] included agreed fees or charges for services rendered * * * in connection with matters other than settlement of [Whitt's] disputed Workers' Compensation Claim." We make our own independent review of the evidence. *In re Chambers,* 292 Or 670, 672, 642 P2d 286 (1982); *In re Galton,* 289 Or 565, 578, 615 P2d 317 (1980).

It seems to be Adams' position that between early January, 1978, when Whitt contacted him in connection with the employer's request for a hearing, and May 3, 1978, when the class action of *Whitt v. Boe* was filed, he did legal work for Whitt separate and apart from the disputed case settlement which had a reasonable value of $3,000. Adams also seems to say that the additional legal work during that

period of time was in preparation for the filing of the class action, but did not include that case once it was filed. Before the Trial Board Adams explained:

"* * * I realized that I would be entitled to what I refer to as $4,000, which I think is corrected at thirty-nine fifty, from the disputed claim settlement.

"And I determined that I could fairly charge it very minimally and not counting many things that I could charge an additional $3,000 for the amount of time that I had spent on behalf of Mr. Whitt, basically, by included [sic] research which eventually led us to the filing of *Whitt v. Boe,* which more thoroughly allowed me to answer his question, which way do I go?

Adams broke down the additional charge of $3,000 as follows:

10 hours @ $60 per hour for preliminary research.
10 hours @ $60 per hour for supervising law clerks.
10 hours @ $60 per hour for letters and contacts.
80 hours @ $15 per hour — law clerks' time.

Adams kept no time records to verify the above hours he estimated. He testified that the law clerks prepared seven different memos — none of these are in the record.

The Disciplinary Review Board found that the evidence of additional services was "unconvincing and vague." We agree. For example, Adams testified that a certain law student was his "summer intern" and that this work was the clerk's "primary assignment that summer." Someone is confused — Whitt contacted Adams during the winter rains in January, the *Whitt v. Boe* case was filed on the 3rd day of May, and the referee officer approved the disputed case settlement on June 12th before the heat of summer.

It is difficult to understand why Adams would charge the sum of $3,000[6] to Whitt alone for the preliminary work that led to the filing of the class action when there were five other plaintiffs. Adams charged all the plaintiffs including Whitt the sum of $200 each for the

---

[6] The actual amount charged by Adams for this "additional work" was the sum of $2,925 or the difference reached when the $3,950 is subtracted from $6,875.

actual preparation and filing of the complaint. The complaint also requested attorney fees for each plaintiff in the amount of $200.

ORS 656.388(1) provides in pertinent part as follows:

"No claim for legal services * * * rendered before a referee or the board * * * in respect to any claim or award for compensation, to or on account of any person, shall be valid unless approved by the referee or board, * * *."

The parties agree that the referee who approved the disputed claim settlement on June 12, 1978 approved attorney fees in only general terms and not in a specific amount. The obvious purpose of ORS 656.388(1) is to protect the worker from excessive attorney fees.

The fact, standing alone, that Adams charged 25 percent of the amount of the disputed claim settlement as attorney fees supports a strong inference that he intended to charge the full amount to his work in connection with the settlement to the exclusion of any other alleged services.

For the foregoing reasons we find by clear and convincing evidence that the attorney fees charged by Adams were clearly excessive and that he is guilty of the first cause of complaint.

In the second cause the Bar alleged that Adams had intentionally prejudiced and damaged his client (Whitt) in violation of DR 7-101(A)(3) by filing suit for declaratory judgment seeking to have the Circuit Court declare the order of August 11, 1978 by the Workers' Compensation Board invalid and reinstate the referee's order of June 12, 1978.

Adams answered that he filed the suit for a declaratory judgment in his own name against Whitt and Transamerica because:

"* * * Whitt was claiming that he should be paid the said sum of $6,875 and the Transamerica Insurance Group was demanding that said sum be paid to it and the accused was put into position where he needed to know whether either of said parties was entitled to the said sum and if there was a payment, to whom it should be paid."

The Trial Board found that Adams was not guilty of the second cause because the attorney-client relationship with Whitt had terminated prior to the filing of the suit for a declaratory judgment. Four members of the Disciplinary Review Board in a majority opinion agreed with the Trial Board. Two members of the Disciplinary Review Board filed a concurring and dissenting opinion which in part is as follows:

"* * * This charge arises out of the Accused filing a lawsuit against his former client, William R. Whitt, and Transamerica Insurance Company, the workmen's [sic] compensation insurer. The suit sought to overturn the decision of the Workmen's [sic] Compensation Board, which had overturned the initial order approving the settlement of Mr. Whitt's claim. The formal attorney-client relationship had terminated, and Mr. Whitt had new counsel and did wish to contest the Board's overturning of the initial approved settlement.

"Had the Accused filed a cause of action against his former client with respect to the fee that he claimed was due, we would have no problem with respect to that action. The Accused did not do this, however, but rather sought to enforce the referee's approval of the settlement against the wishes of his former client. The majority and the Trial Board apparently found that since the Accused was not successful ultimately in his litigation to enforce the settlement against the then wishes of his client, the Disciplinary Rule was not violated since he had not prejudiced or damaged 'his client during the course of the professional relationship. . . .'

"We read the Disciplinary Rule more broadly so that an attorney may not undertake acts to prejudice or damage his client after the legal employment has ceased. We do not construe 'professional relationship' as meaning the same thing as 'professional employment', but believe that the professional relationship would continue where it pertains to facts and issues arising directly from the prior employment and where it goes beyond a mere fee dispute.

"It seems clear to us that the Accused was seeking undue leverage in order to collect his fee at the intended prejudice of his client's interest in the substance of the case."

We agree with the dissenting opinion filed by two members of the Disciplinary Review Board.

DR 7-101 in effect provides:

> "A lawyer shall not intentionally prejudice or damage his client during the course of the professional relationship * * *."

In the case of *In re Drake,* 292 Or 704, 642 P2d 296 (1982), the attorney Drake was accused of borrowing the sum of $10,000 from his client, Gallagher, in violation of several Disciplinary Rules. Before the Trial Board Drake consistently contended that at the time the loan was made the relationship of attorney and client did not exist because the previous employment had terminated. This court found that the relationship of attorney and client did in fact exist and quoted from the Disciplinary Review Board in that case as follows:

> " 'If Accused's contention is to be accepted, then the simple termination of a case creates an opportunity or period in which an attorney is freed from the rules governing attorney-client relationships. During this period the attorney would be free to use the rapport and confidence he had developed with his former client to persuade the former client to do things that would otherwise be prohibited by disciplinary rules governing client relationships. After these actions were completed, the attorney could then freely enter into a new relationship with the former client. The only important thing would be that the paperwork showing opening and closing dates of cases be kept in order. The attorney would point to these as proof the aggrieved party was not a client during the period in question.' " 292 Or at 713.

We think that the dissent filed with the Disciplinary Review Board in this case hit the nail on the head when it made a distinction between "professional employment" and "professional relationship." A lawyer owes a duty to a client in the context of a "professional relationship" long after the "professional employment" has terminated. For example, the lawyer cannot reveal privileged communications after the termination of his or her employment by the client or use secrets he gained through the employment. Just as a lawyer may not undertake litigation for a subsequent client which, if successful, might reasonably impose liability on a former client by reason of a transaction in which the lawyer represented the former client, a lawyer

may not undertake such litigation for himself. *In re Nicholas D. Zafiratos,* 259 Or 276, 486 P2d 550 (1971).[7]

■ We find by clear and convincing evidence that Adams intentionally damaged Whitt during the course of a professional relationship by filing the suit for a declaratory judgment seeking to set aside the Workers' Compensation Board's order of August 11, 1978. The suit was contrary to the position of Whitt. Mrs. Whitt testified that the new attorney from Albany employed by her husband called the Workers' Compensation Board and requested that the hearing officer's order of June 12, 1978 be cancelled. Whitt was forced to hire a lawyer to defend the declaratory judgment suit in the Circuit Court and to appeal to the Court of Appeals. *Adams v. Transamerica, supra.* This was not the type of case that was filed in anger on short notice. The Workers' Compensation Board order was entered on August 11, 1978 and the declaratory judgment suit was not filed until December 1, 1978. If Adams' only concern, as indicated by his answer, was to determine whether Whitt or Transamerica was entitled to the $6,875, he could have merely pleaded the money into court. The conclusion is inescapable that Adams was trying by the declaratory judgment suit to gain court approval of the attorney fees in the amount of $6,875 to the complete disregard of Whitt's long term welfare.[8]

We therefore find Adams guilty of the second cause of complaint.

■ In the third cause of complaint the Bar alleged that Adams, by filing a counterclaim against Whitt seeking to recover damages and attorney fees because Whitt had filed a complaint against Adams with the Oregon State Bar, was in violation of DR 7-101(A)(3) and ORS 9.460(3).

The counterclaim filed by Adams was in an action filed by Transamerica against Adams and Whitt seeking to

---

[7] This would not include a situation where the attorney was suing to collect his attorney fees.

[8] At the time of the hearing before the Trial Board Whitt was again receiving permanent total disability payments from Transamerica with some sort of an arrangement to repay the lump sum received in June, 1978 as a result of the disputed case settlement.

recover on the basis of money had and received the sum of $6,875 retained by Adams as attorney fees from the sum of $27,500 paid by Transamerica pursuant to the disputed case settlement approved by the referee on June 12, 1978.

The counterclaim was filed on January 30, 1981 and in part provided:

> "Whitt also initiated a fruitless Complaint before the Oregon State Bar, thereby subjecting Adams to substantial mental anguish and expenditure of time; all resulting to the damage of Adams to the amount of $2,500, plus attorney's fees to the reasonable amount of $3,000."

The counterclaim of Adams was withdrawn when an amended answer was filed on June 2, 1981.

The Trial Board found Adams not guilty of the third cause of complaint because: (1) ORS 9.550(3) provided Whitt with a defense to the counterclaim for damages, (2) the filing of the counterclaim did not occur "during the course of the professional relationship," and (3) ORS 9.550(3) does not provide a basis for the violation of the Disciplinary Rules.

All six members of the Disciplinary Review Board found that Adams was guilty of violating ORS 9.460(3), but not guilty of violating DR 7-101(A)(3) as the conduct did not occur during Adams' representation of Whitt.

ORS 9.550(3) provides:

> "* * * No person who has made a complaint as to the conduct of an attorney, or who has given information or testimony in or relative to a proposed or pending disciplinary proceeding against an attorney or in or relative to a proposed or pending contested admission or reinstatement proceeding, shall be answerable for any such act in any proceeding, except for perjury committed by that person."

ORS 9.460(3) provides:

> "An attorney shall * * * counsel or maintain such actions, suits, or proceedings or defenses only as may appear to him legal and just, except the defense of a person charged with a public offense; * * *"

ORS 9.550(3) gives an absolute privilege, except for perjury, to complaining witnesses and parties in disciplinary proceedings. Because of the absolute privilege the

counterclaim simply was not available to Adams and could not be a legal claim under ORS 9.460(3). As the Bar has pointed out in its brief in this court, the issue is not whether Whitt can answer the counterclaim with a valid defense but whether Whitt should be held to answer in any proceedings for filing a complaint with the Oregon State Bar against Adams, short of perjury. The fact that Adams filed an amended answer and thereby withdrew the cross-complaint does not change matters. For the period of January 30, 1981 to June 2, 1981, Whitt was held to answer by the counterclaim — this may have cost him some additional attorney fees and caused him some mental anguish of the type that Adams had complained about.

We find by clear and convincing evidence that Adams is guilty of the third cause of complaint because he violated ORS 9.460(3) by filing the counterclaim. He therefore is guilty of wilful misconduct and subject to suspension under ORS 9.480(4).

Because of the result we reach on the third cause of complaint, we find it unnecessary to decide if Adams violated DR 7-101(A)(3) by filing the counterclaim against Whitt.

We find that Adams is not guilty of unethical conduct in the aggregate as charged in the fourth cause of compliant. We do not decide whether the form of the fourth complaint substantially complies with Section 17 of the Oregon State Bar Rules of Procedure.

The Disciplinary Review Board recommended that Adams be required to refund to Whitt "any sums not ultimately approved in the Workers' Compensation Claim." We do not accept that recommendation because that matter is currently being litigated in the case of *Transamerica v. Adams and Whitt.*

It is ordered that Adams be suspended from the practice of law in this state for a period of 60 days. Costs awarded to the Oregon State Bar.