Submitted on record November 2, accused suspended for 30 days December 7, 1982

In re: Complaint as to the conduct of

# JON H. PAAUWE,
*Accused.*

## (OSB No. 81-9, SC 28959)
654 P2d 1117

Alan B. Holmes of Holmes, James, Galpern & McCollum, P.C., Medford, for the Accused.

E. R. Bashaw, Medford, for the Oregon State Bar.

PER CURIAM

## PER CURIAM

The accused was charged with violation of disciplinary rules of the Code of Professional Conduct in four respects arising out of his representation of certain clients regarding one legal matter. The matter comes before us in an unusual way. The Oregon State Bar and the accused have recommended to us that we adopt the opinion and recommendation of the Disciplinary Review Board. Prior to examination of the record, we advised them that we would treat the matter as having been submitted on the record and would make our own findings of fact and conclusions of law.

The uncontested facts are that the accused undertook to represent the clients in January, 1977, concerning problems they were having with the purchase of a home. When the clients first came to the accused on a Monday, they had already closed the sale on the previous Friday. They had discovered what they believed to have been defects and injury to the premises, concealed by the sellers. The accused immediately explored the possibility of halting the transaction but found that the deed had been delivered for recording and the money of the clients had been disbursed according to the escrow instructions.

The accused agreed to go ahead with a claim for damages on the part of the clients. It was anticipated that litigation would be necessary because the sellers had moved out of the state. The accused had little communication with his clients over the next several months, but in September, 1977, he had prepared a complaint in deceit for their consideration, and in October, 1977, he filed the complaint. After the defendants in April, 1978, had answered, asserting affirmative matter, the accused took four months to file a reply that was nothing more than a general denial of the affirmative matter. Following certain procedural motions, the accused in July, 1979, filed an amended complaint, changing the theory of recovery from tort to contract. Defendants' motion against the amended complaint was filed, heard and partially allowed in October, 1979. In January, 1980, the accused complied with the order to make certain allegations more definite and certain and filed a second amended complaint.

Trial finally commenced on February 13, 1980. At the end of the first day of trial, the accused was too ill to continue trial on the following day, and the trial concluded on March 7, 1980.

The Bar's complaint charged that the accused's conduct in those respects violated the following disciplinary rules:

"DR 1-102(A)(5). A lawyer shall not: Engage in conduct that is prejudicial to the administration of justice."

"DR 6-101(A)(3). A lawyer shall not: Neglect a legal matter entrusted to him."

"DR 7-101(A)(3). A lawyer shall not intentionally: Prejudice or damage his client during the course of the professional relationship * * *."

The Trial Board found that the accused's conduct violated DR 1-102(A)(5) and 6-101(A)(3) but that he had not intentionally prejudiced or damaged the clients. The Disciplinary Review Board agreed.

We agree. The accused not only neglected the legal matter entrusted to him, but since litigation was involved, the delays in moving the case along, once it was commenced, were prejudicial to the administration of justice. The facts do not, however, support a finding that he intended to prejudice or damage the clients.

The second charge was that during the course of events above outlined the accused received an offer of settlement from counsel for the sellers, that the accused did not accept the settlement offer from the opposing party and did not consult with or even advise his clients that an offer had been made and rejected until just before trial. It was alleged that this conduct violated DR 1-102(A)(5) and 7-101(A)(3), both quoted above.

The facts we find from the evidence are that counsel for the sellers, in late January, 1980, stopped by the accused's office one Saturday morning and in counsel's words, "put out a feeler, if you will, with regard to settlement" and indicated that he believed the sellers would be willing to settle the case for "somewhere in the area of" $2,500. The accused indicated that he didn't think his clients would be interested in anything less than $6,000 to

$6,500, which was about two-thirds of the amount of claimed damages in the case. After that conversation, counsel for the sellers did obtain authorization to settle the case by payment of $2,500, but only if the money could be paid in installments.

Shortly thereafter, in the early part of February, 1980, counsel for the sellers communicated to the accused that the sellers were nearly insolvent but would be willing to pay $2,500 over some indefinite period of time. The accused asked for a sworn financial statement from the sellers, and their counsel sought one from them. They did not submit such a statement; rather, they submitted an unsworn statement purporting to represent their general financial condition. That information was not supplied to the accused.

On the eve of trial, the accused and his clients had some discussion concerning the figure of $2,500. The clients recollected that the accused told them that the sellers had made an offer of settlement in that amount and that the accused told them that he had rejected it without consulting them. The accused testified that he had mentioned the sum of $2,500 as having been discussed by himself and counsel for the sellers but that he did not tell them that he had rejected an offer in that amount and would not have done so because there was actually no firm offer ever made.

■ The Trial Board found that sellers' counsel never presented the $2,500 figure in the form of an offer that would bind his clients if accepted and "that no valid offer was made at that time." The Disciplinary Review Board agreed. We find that there was no firm offer made in that amount. In a disciplinary proceeding, the evidence must be clear and convincing to establish a charge. *In re Lathen,* 294 Or 157, 654 P2d 1110 (1982). The evidence here is not up to that quantum to establish that he rejected an offer of $2,500 without consultation with his clients.

Prior to the day trial commenced, sellers authorized their counsel to go as high as $4,500 to settle the case. On that day the parties and their counsel were all on the third floor of the courthouse awaiting commencement of the trial. The parties were at opposite ends of the hallway

from each other. Counsel had several meetings at a point out of earshot of the parties, and settlement was discussed. Sellers' counsel testified that he believed that he finally did get up to the figure of $4,500 during those discussions with the accused. His recollection, admittedly vague, was that the accused never mentioned any figure less than $6,000 to $6,500 as being authorized by the plaintiffs for settlement. The accused testified that he did discuss with his clients the offer of $4,500 made in the courthouse and that they discussed that a part of that would have to go to the accused for attorney fees and expenses. He testified that he and the clients discussed the matter "extensively" and that they rejected the offer.

One of the accused's clients testified that on the day before the trial commenced, the clients and the accused were at the accused's office preparing for trial and that the accused advised them that they should seriously consider an offer of $4,000 to $5,000 if one could be obtained from the defendants. That client testified that he agreed that such an offer, if made, "would have to be considered." He testified that the clients did not authorize the accused to settle for any given figure. He flatly denied that there was any discussion of an offer of settlement on the day of trial at the courthouse among the clients and the accused.

The other of the accused's clients also testified that the accused did not communicate to them any offer of settlement at the courthouse while they were awaiting trial to commence.

The Trial Board found that the Bar had "failed to prove that the subsequent offer of $4,000.00-$4,500.00 was not transmitted to his clients by the Accused." The Disciplinary Review Board agreed.

The testimony of the accused is directly contradictory to that of the clients on this issue of fact. No one has offered any motive to explain why the accused would not have communicated such an offer. We think it most reasonable to infer that, given the clients' position that there was a discussion with the accused that an offer in that range should be seriously considered, and the testimony of sellers' counsel that he made such an offer in the courthouse, the offer was communicated to the clients. We so find.

The third charge was that the accused failed to prepare and try the case properly. It was alleged that he failed properly to plead the case, failed to conduct adequate pretrial discovery, and failed to subpoena witnesses that should have been called, all in violation of DR 6-101(A)(2):

"A lawyer shall not: Handle a legal matter without preparation adequate in the circumstances."

The Trial Board found there was no evidence of inadequate preparation, and the Disciplinary Review Board agreed.

There was evidence of inadequate preparation, but there was also contradictory evidence. There is nothing to be gained by reviewing all of this evidence in detail because we do not conclude from all of the evidence that it is "highly probable" that the charge of inadequate preparation is true. *See In re Lathen, supra,* and *Cook v. Michael,* 214 Or 513, 527, 330 P2d 1026 (1958), for the proposition that clear and convincing evidence is that from which the trier of fact can find it "highly probable that the matter asserted is true."

The trial judge in the circuit court case found in favor of the defendant sellers. He entered judgment in their favor for attorney fees and costs and disbursements. The accused did not communicate that fact to the clients. He filed a notice of appeal on their behalf without consulting with them as to his intention to do so. Eventually, the appeal was dismissed upon motion of the sellers for want of a necessary undertaking, and the Court of Appeals ordered that they should recover an additional $330 for costs and disbursements upon appeal. The accused did not advise his clients of that fact.

The clients first learned of the trial court result and the subsequent events when they received written communications from sellers' counsel, demanding payment of the amounts due under the respective court decisions. They satisfied the judgments in the total amount of almost $2,000.

The Bar charged that the accused violated disciplinary rules by filing the appeal without advising his clients and without obtaining their consent, and that he did not take necessary steps to protect his clients' appeal

rights. The rules allegedly violated were DR 1-102(A)(5) and 7-101(A)(3).

The Trial Board found that this conduct concerning the post-trial conduct was prejudicial to the administration of justice but that he did not intentionally damage or prejudice his clients. The Trial Board found there was no evidence that there was any merit to the appeal. The Disciplinary Review Board agreed with the Trial Board.

While it is true that the accused intentionally performed an act, i.e., the filing of the notice of appeal, that resulted in damage to his clients, we agree that the accused did not violate DR 7-101(A)(3). We accept his evidence that he was so deeply disappointed in the result in the trial court that he could not emotionally bring himself to accept that he had lost. He filed the notice of appeal, hoping that the day could yet be saved. Upon mature thought, he realized that the case had been tried on the law side, that there was evidence to support the trial judge's result, and that there was virtually no hope of success of the appeal. When he had filed the notice of appeal, he had not anticipated that the sellers would designate a transcript of testimony as part of the record on appeal and that the accused's clients would become liable for that item of disbursements. In these circumstances, we conclude that he did not intentionally damage or prejudice his clients in the sense of DR 7-101(A)(3).

■ ORS 9.460 enjoins an attorney to maintain only such actions as may appear to him to be "legal and just" and not to encourage the continuance of any action from any "motives of passion or interest." A purpose of ORS 9.460 is furtherance of the administration of justice by discouraging the maintaining of meritless litigation. The filing of this unauthorized and meritless appeal was prejudicial to the administration of justice.

■ The Trial Board recommended that this court administer to the accused a public reprimand. The Disciplinary Review Board was of the opinion that the post-trial conduct of the accused with respect to failure to apprise his clients of what had happened and subjecting them to the liability for costs and disbursements on appeal was so

serious as to warrant a suspension for a period of thirty days.

As noted at the outset of this opinion, both the accused and the Bar have recommended to this court that we adopt the opinion and recommendation of a thirty-day suspension. We do not adopt them, but we are in agreement with the findings of the Trial and Disciplinary Review Boards upon the basis of our own examination of the record. Further, we find that a thirty-day suspension from the practice of law is the proper sanction.

The accused is suspended from the practice of law for a period of thirty days. The Oregon State Bar is the prevailing party, and we award the Bar its actual and necessary costs and disbursements. ORS 9.535(4).