Argued and submitted September 8, complaint dismissed December 7, 1982

# In Re: Complaint as to the Conduct of
## NEIL F. LATHEN,
*Accused.*

(SC 28725)

654 P2d 1110

Malcolm F. Marsh, Salem, argued the cause for the Accused. With him on the brief was Clark, Marsh, Lindauer, McClinton & Vollmar, Salem.

Frank Noonan, Portland, argued the cause for the Oregon State Bar. With him on the brief was Winfree & Noonan, Portland.

PER CURIAM

Roberts, J., dissented and filed opinion in which Tanzer, J., joined.

## PER CURIAM

The issue is whether the accused was required by the Disciplinary Rules of the Code of Professional Conduct to withdraw as counsel from the conduct of a trial. DR 5-102(A) provides:

"If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5-101(B)(1) through (4)."

This matter, for the most part, calls upon us to exercise our factfinding function.

We follow the rule that an accused in a disciplinary action is entitled to the presumption that he is innocent of the charge. *In re Galton,* 289 Or 565, 579, 615 P2d 317 (1980). When exercising our factfinding responsibility, we independently review the evidence and require that it be clear and convincing to establish the charge. *In re Adams,* 293 Or 727, 652 P2d 787 (1982); *In re Galton, supra.* This means that the evidence must be such as to cause the trier of fact to find that the truth of the facts asserted is highly probable. *Cook v. Michael,* 214 Or 513, 527, 330 P2d 1026 (1958). Having so reviewed the evidence, we find facts as follows:

## FINDINGS OF FACT

1. The accused is, and at all times material hereto was, a lawyer. Charles Burt was a member of his law firm.

2. On June 22, 1980, a lady, whom we shall call "Client," was driving a motor vehicle and became involved in an accident. Investigating Salem police decided to charge Client with driving while under the influence of intoxicants (DUII) and took her to jail.

3. Burt was a friend of Client and had represented members of her family. Upon her request, Burt was called by telephone, whereupon he went to the scene of the

accident and engaged in conversation concerning the accident with an investigating police officer. Burt then went to the jail, where he was kept waiting for approximately twenty minutes in a place where he could hear conversation between Client and the police but could not see them.

4.  Approximately two hours after the accident, Client came into Burt's sight, was released and, at her request, Burt took her to the abode of her friend Marge and departed.

5.  A few days later Client telephoned the accused, and they agreed that the accused would represent her upon the DUII charge. During that telephone conversation, Client mentioned to the accused that Burt had picked her up at the jail. She also then discussed with the accused Marge's knowledge of the events.[1]

6.  In late July, 1980, Client came to the accused's office and again related to him the events of the day of the accident. Among other things, she told the accused that she had asked the police to call Burt to come get her, that Burt had done so and that Burt had dropped her off at Marge's apartment.

7.  The case was set for trial on a Wednesday, January 7, 1981, and on the preceding Monday, January 5, 1981, Client had a telephone conversation with the accused concerning the trial. In discussing witnesses to be used in addition to Marge, Client reminded the accused that Burt had picked her up at the jail and driven her to Marge's place. The accused wrote down Burt's name.

8.  Pursuant to the rules of the municipal court where the case was to be tried, the accused on that Monday furnished to the city attorney's office a list of defense witnesses, giving the names of Marge and Burt and another person, who was not actually called at trial.

9.  On that same Monday, the accused spoke to Burt's secretary and asked her whether he would be available as a witness on Wednesday. The secretary informed

---

[1] It appears that Marge had been with Client during the hours before the accident and would testify that Client had had only two drinks. Marge was also to be a witness that Client's demeanor at the time of the accident and her arrest was because of emotional trauma rather than the influence of intoxicants.

the accused that Burt had a case to try in another county on Wednesday. At that time the accused had never discussed the matter with Burt and did not know exactly to what Burt might testify. The accused told the secretary that if Burt "can spring himself, and agree to come up, send him up."

10. On that same Monday, Burt's secretary informed him that the accused had spoken to her concerning having Burt as a witness at the trial on Wednesday. Burt told his secretary that his scheduled trial in the other county would prevent his being a witness on Wednesday.

11. On that same Monday, the deputy city attorney, who was to prosecute the case, learned from the accused's secretary the names of Client's witnesses, including that of Burt. The prosecutor was aware that Burt was a law partner of the accused. It came to the prosecutor's mind that this perhaps presented an "ethical problem."

12. The prosecutor consulted the Code of Professional Conduct and on Tuesday, January 6, 1981, mentioned the problem to other attorneys in the city attorney's office at a meeting. She put in a telephone call to the accused on Tuesday, but he did not return it.

13. On Wednesday morning, Burt settled the case which he was to try and in his words "was told sometime Wednesday to be over to the City Court in the afternoon around 2:30 perhaps 3:00."

14. On Wednesday at noon, Client and Marge came to the accused's office, and they all talked about the trial and the testimony to be given until about 1:10 p.m. and then went to the place where the trial was to take place.

15. Prior to the commencement of the trial, the prosecutor did not talk to the accused about the ethical problem which she had perceived.

16. Trial without jury commenced before a judge pro tempore. The prosecution called two police officers; each testified to an opinion that Client had been under the influence of intoxicants, and the prosecution rested. A recess was taken.

17. During the recess, the accused and Client went outside the courtroom and found that Burt was there. After Burt told the accused what Burt knew about the case, the accused told Burt that he would be called as a witness.

18. Marge was called as the first defense witness and testified that she had been with Client during the afternoon in the time just prior to the accident, that Client had had two drinks, that Client was emotionally upset by a matter concerning a personal relationship with another person, and that in Marge's opinion Client was not under the influence of intoxicants "minutes before the accident."

19. The accused then called Burt as a witness, and as he entered the courtroom, the prosecutor, either by objection or motion, sought to exclude any testimony from him on the ground that it was unethical to allow him to testify.[2] The accused then conferred with Burt about the ethical question but did not confer with Client. A colloquy ensued in which the accused first contended that there was no violation of the disciplinary rules and then offered twice to withdraw as counsel. The judge knew that the cause could not be set for another trial for about six months and eventually ordered the accused to proceed with the trial.

20. Burt testified, among other things, that at the time he observed Client after the accident, it was his opinion that she was not under the influence of intoxicants.

21. Client testified in her own defense, and the defense then rested.

22. The judge, in announcing his finding of "not guilty," stated that he considered Burt's testimony and gave it weight in finding that Client was not under the influence of intoxicants.

23. Client had retained the accused because of his reputation as an outstanding DUII defense lawyer and previous acquaintanceship with him. During the time between her arrest and the trial, and throughout the trial,

---

[2] The prosecutor's testimony before the Trial Board that she did not, as a matter of strategy, wait until that time to raise the ethical question to gain an advantage is not contradicted by any direct evidence.

Client was very nervous and desired that the matter be brought to a conclusion as soon as possible.

24. If the trial had not continued, Marge might not have been available for trial at a later time.

25. At the time the accused conferred with Burt outside the courtroom at recess, the accused learned and it was obvious that Burt ought to be called as a witness.

## WITHDRAWAL DURING TRIAL

In his answer to the complaint filed by the Oregon State Bar, the accused denied the charge that his conduct was unethical and raised five affirmative defenses primarily based upon exceptions to the requirement of withdrawal. DR 5-102(A) provides that the lawyer may continue the representation in the circumstances enumerated in DR 5-101(B)(1), (2) and (4). Those exceptions permit the member of the firm to testify:

"(1) If the testimony will relate solely to an uncontested matter.

"(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

"* * * * *

"(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case."

The second affirmative defense was based upon DR 5-101(B)(1) and made a claim that Burt's evidence related solely to an uncontested matter because his testimony did not go to

"whether or not [Client] was under the influence at the time of the arrest, which is the critical time on the criminal matter."

If that were so, Burt's opinion that Client was not under the influence at the time he observed her at the police station could not have been legally relevant and one must wonder why it was offered. The evidence was relevant and admissible. It did not go to an uncontested matter but to the very heart of the contested matter. The trial judge gave

it weight in his decision. The affirmative defense is not established.

The third affirmative defense was based upon DR 5-101(B)(2) and contended that there was

> "no reason to believe that substantial evidence would be offered in opposition to the testimony of [Burt] in that [Burt's] testimony related to the Defendant's condition long after the time of arrest."

This affirmative defense is baseless for the same reasons as was the second.

The fourth affirmative defense is that the accused's conduct was permissible under "Ethics Opinions 48, 91, 126, and 262" of the Opinions of the Oregon State Bar Committees dealing with legal ethics. We have examined those opinions although, of course, they are not binding authority. The first three were rendered prior to the adoption of the disciplinary rules by this court in 1970 and were concerned with the largely hortatory language of former American Bar Association Canon 19. As we have noted previously, it is the text of the particular disciplinary rule with which we must be concerned, not the general terms of a Canon. *In re Ainsworth,* 289 Or 479, 493, 614 P2d 1127 (1980). Those committee opinions are of no continuing importance in considering whether a lawyer has violated the disciplinary rule herein concerned. The fourth opinion on which the accused relies is by its own terms limited to the particular set of facts before the committee which rendered the opinion. This case is not even close to that case. The fourth affirmative defense is rejected.[3]

In the first affirmative defense based upon DR 5-101(B)(4), the accused asserted that had he refused to proceed as counsel

> "it would have worked a substantial hardship on the client because of the distinctive value of the accused's services as counsel in this particular case. (DR 5-101(B)(4) exception). The accused has special expertise in trial work and especially in defending driving while under the influence of intoxicant cases."

---

[3] There is nothing in the record to indicate that the accused relied upon any of the identified committee opinions or was even aware the opinions existed at the time of the DUII trial.

There was testimony, which we believe, from the trial judge, a circuit judge, a district judge, and practicing lawyers that the accused is regarded in legal circles as being one of the best trial counsel for defense of DUII cases in the territory. There was other evidence, which we likewise believe, from the same witnesses that there were in the area other trial counsel skilled, and often successful, in defense of such cases.

To accept the fact of the accused's premier place among DUII trial lawyers in Marion and Polk Counties as in itself being sufficient to establish hardship sufficient unto the exception would mean that an outstanding trial lawyer in any given universe of trial practice would be free to testify to the merits of his client's case or to call his partner to do so. We do not believe that result is intended by the exception and, accordingly, reject that defense.

Without objection, however, evidence was adduced before the Trial Board to establish the facts we have found in Finding No. 23, *supra.* This evidence was introduced to support a claim of undue hardship upon the client should it be necessary to commence the trial anew some six months later rather than to proceed to a conclusion on the day in question. We are inclined to agree that given the emotional makeup of Client and the effect upon her of the wait between arrest and trial and the emotional trauma of the trial itself, it would have been a "substantial hardship" on her to bring the trial to a halt by requiring the accused to withdraw as counsel. That does not satisfy the terms of the exception. The "substantial hardship" must be "because of the distinctive value of the lawyer or his firm as counsel in the particular case." It is our finding that the substantial hardship was not thus caused. Any substantial hardship would have been the result of Client's emotional makeup and the failure of the accused to ascertain earlier that his partner "ought to be called" and, therefore, to withdraw long before trial.

The fifth affirmative defense is that the testimony by Burt was given

"pursuant to a ruling of the trial judge, after full argument and discussion consistent with the newly adopted Evidence Code, Section 50, Rule 606-1(5) which allows testimony such as B's when,

" 'The Court finds that the interests of justice require the testimony.' "[4]

There was no discussion of that rule of evidence with the trial judge. That rule of evidence had not yet been adopted when the DUII trial took place. The Bar has argued, and the Trial Board agreed, that it should not be applied therefore to this case. The Disciplinary Review Board suggested that "this was error."

> "This board and the courts of this state surely have inherent power, with or without codification, to invoke a ruling that finds 'that the interests of justice require the testimony' as the trial judge did in this case."

Whether such inherent power exists, we do not here decide. It is true, however, that the trial judge did testify that many things went through his mind at the time he ordered the accused to proceed. He was concerned for the expense to the client; he was confused as to the terms of the disciplinary rule and its application to the trial of a DUII case; he was aware of the substantial delay before the case could again commence trial. He testified that taking all of these concerns together, he did believe that it was in the interest of justice that the trial proceed with the accused as counsel.

■    The terms of the disciplinary rule required the accused to withdraw as counsel at the time he learned at recess that Burt ought to be called as a witness. None of the exceptions in DR 5-101(B)(1), (2) or (4) are applicable. He did not withdraw. He violated DR 5-102(A) as charged by the Bar.

Because of the trial judge's order to proceed with the trial, however, the accused was faced with the choice of withdrawing when he believed, wrongly or not, that he had not behaved unethically, or obeying the ruling of the judge to continue. In the circumstances, the accused was required to continue.

---

[4] Oregon Rule of Evidence 606-1 provides:

"An attorney representing a party litigant at trial shall not * * * offer a member of the attorney's firm as a witness at that trial unless:

"* * * * *

"(5)   The court finds that the interests of justice require the testimony."

We hold, therefore, that although the accused should have withdrawn as counsel when he learned and it was obvious that he ought to call his partner as a witness, the imposition of discipline is not appropriate in the circumstances.

## WITHDRAWAL PRIOR TO TRIAL

The Bar has urged that the accused should have withdrawn prior to trial and thus the contretemps which occurred during trial would never have arisen. This contention rests upon the implied premise that prior to trial it was either obvious or the accused should have known that Burt ought to be called as a witness.

The accused testified to the following: He handles a large volume of DUII defenses. He processes them "as quickly and as efficiently as possible." He has his secretary write to the prosecutor to get the police reports. When the report is secured, he does not read it "because I have a great deal of cases going." He has his secretary copy it and send the copy to the client. He has a "tickle system" which gets the file back to his attention about three months later. He checks to make sure the police report is in and the client has received a copy. He checks for the payment of the fee. At that time he reviews the file as "quickly as possible." He arranges to have the file again brought to his attention about two or three days before the assigned trial date. He followed that procedure in this case. He further testified:

"Q. Is there a point in time in the processing of these cases when you give consideration to who the Witnesses are, who are going to be called to trial?

"A. Yes.

"Q. When does that occur?

"A. That occurs when I get right down to the wire, generally two sometimes three days before the trial. That's how I won — When they're first in my office, I say to them, 'O.K., now to save yourself money, I want you to contact anybody who might be a Witness.' And I don't go into who that Witness might be, just anybody who might be a Witness.

"And then they let them know about the trial date once they get that information, and they — you can't afford an Investigator, they do the leg work for it. They let the

witness know and they talk to them. I don't get back to see them until shortly before the trial.

"In this case, two days, sometimes like I say three and sometimes four. That would be the very earliest I would ever get involved in any case."

He lets the client contact the witnesses because they are usually friends of the client. He never spoke to Burt about what his testimony might be prior to the recess in the trial at the end of the prosecution's case.

We accept the foregoing as being true.

The accused's position is that at no time prior to the interview outside the courtroom did he know or was it obvious that Burt ought to be called. He makes the point that the disciplinary rule is not couched in terms of negligence; it does not predicate the duty to withdraw on what the lawyer, in the exercise of reasonable care, should have known.

We agree that the test under text of DR 5-102(A) is not what one might have learned in the exercise of reasonable care in preparing a case for trial. We are not confronted with a claim for malpractice by a disappointed client insisting that her case was lost as a result of a failure to prepare properly for trial. Neither do we have a charge of failure to obey DR 6-101(A):

"A lawyer shall not: * * * (2) Handle a legal matter without preparation adequate in the circumstances. (3) Neglect a legal matter entrusted to him."

Such a charge would call for a different analytical approach than we have here taken. Rather, we have a charge of failure to obey a particular disciplinary rule, which requires that it be shown that the lawyer actually learned or that it was obvious that his partner ought to be called.[5] Upon the evidence in this record, we cannot say that it is highly probable that the accused either learned or that it became obvious to him prior to the middle of the trial that Burt ought to be called. In other words, the charge as to

---

[5] Disposition of this case does not require us to determine whether the rule depends upon it being obvious to the particular lawyer or if it would be enough that it be obvious to a reasonable person in all the circumstances.

unethical conduct in failing to withdraw before trial has not been established by clear and convincing evidence.

The complaint of the Oregon State Bar is dismissed. Judgment for costs and disbursements is not awarded. ORS 9.535(4). *In re Ainsworth, supra.*

**ROBERTS, J.,** dissenting.

The majority holds that DR 5-102(A) requires that it be shown that the accused actually learned or that it was obvious to the accused that his partner ought to be called in the trial of Client. The majority then concludes that the evidence in this record does not allow this court to say "that it is highly probable that the accused either learned or that it became obvious to him prior to the middle of the' trial that Burt ought to be called." I disagree and, therefore, dissent.

The facts as set out in the majority's findings establishes that there were at least three times before trial in which the accused was informed or reminded that Burt had some involvement with Client shortly after her arrest. The first was during a telephone conversation between Client and the accused a few days after Client's arrest when Client mentioned that Burt had picked her up at the jail. Findings of Fact 5. The second was in July, 1980, when Client related to the accused in his office that she had asked the police to call Burt to come get her and he had done so. Findings of Fact 6. The third time was two days before trial when Client again reminded the accused that Burt had picked her up at the jail. Findings of Fact 7.

Thereafter, on the same day, the accused provided to the city attorney's office a list of names of defense witnesses, including the name of Burt. Findings of Fact 8. On that same day the accused asked Burt's secretary if he would be available as a witness at the trial. When informed by the secretary that Burt had a case to try in another county the accused replied, if Burt "can spring himself, and agree to come up, send him up." Findings of Fact 9.

The majority opinion describes how the accused prepares for trial. He does not consider who the witnesses are until "two sometimes three days before the trial." That is consistent with what happened in this case. Two days

before trial Client had a conversation with the accused and reminded him that Burt had picked her up, the accused wrote down Burt's name and spoke to Burt's secretary indicating Burt should be at the trial if he could.

The majority states that there is evidence in the record that the accused is regarded as an outstanding trial counsel for defense of DUII cases. It is inconceivable that such a lawyer would not comprehend the importance of a witness who had actually observed and interacted with a DUII defendant for a period of time immediately following her arrest and release. It is also unlikely that Client's reminders to the accused that Burt had picked her up at the jail were based upon anything other than that Burt would be a favorable witness for Client.

The accused may have been confident that he could win Client's case without Burt but that if Burt was available it would simply be another arrow in his quiver. The evidence establishes that it appeared highly probable to the accused two days before trial that Burt's testimony would be useful to his Client. Under these circumstances that is sufficient to show that this lawyer knew he ought to call Burt as a witness. Had he acted at that time to withdraw from the case the problem of whether to continue the trial when the ethical question was presented to the court would never have occurred. It is apparent, when presented with a situation such as this, a trial court will ordinarily order the trial to continue because of the hardships to the defendant. Such an order would not have been necessary, however, if the lawyer's pre-trial non-compliance with DR 5-102(A) had not created the situation which the rule is intended to avoid. Thus, the trial court's mid-trial order that the lawyer continue does not, as the majority holds, excuse it. I would reject the Disciplinary Review Board's recommendation to dismiss this case and accept the Trial Board's recommendation of a public reprimand.

Tanzer, J., joins in this dissent.