Argued and submitted September 19, affirmed December 26, 1991, reconsideration denied May 13, petition for review denied June 23, 1992 (313 Or _____)

In the Matter of Gino Pieretti,
Alleged to be a Mentally Ill Person.

## STATE OF OREGON,
*Respondent,*

*v.*

## GINO PIERETTI,
*Appellant.*

(8905-96077; CA A61205)

823 P2d 426

Orrin Leigh Grover, Woodburn, argued the cause and filed the brief for appellant.

Jas. Adams, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Joseph, Chief Judge, and Deits, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

Defendant appeals from an involuntary commitment order. ORS 426.130. He asserts that he was denied due process and that he is not mentally ill. ORS 426.005(2). We review *de novo, State v. O'Neill,* 274 Or 59, 61, 545 P2d 97 (1976), and affirm.

On May 17, 1989, 2 of defendant's friends filed a notification that they believed that he was mentally ill. *See* ORS 426.070(1). They reported that he was delusional and had threatened to kill them, his psychiatrist, his estranged wife and her attorney. After a pre-commitment investigation, the court issued a citation on May 24, ordering that a commitment hearing be held the next day. ORS 426.070(5). Defendant requested a postponement, asserting that he needed more time to obtain an attorney. The court granted the request and scheduled the hearing for June 5. Defendant failed to obtain an attorney, and the court appointed one for him. ORS 426.100(3)(d).

At the hearing, defendant's counsel requested a 2-week setover so that defendant could be represented by another attorney. The court denied the motion, because it had already granted a postponement beyond the 5 days allowed by statute. ORS 426.095(2)(a).[1] On the second day of the hearing, 2 attorneys offered to represent defendant if the court would grant a continuance. It refused. Defendant's counsel then requested that she be allowed to withdraw. The court denied her request and denied defendant's request to represent himself.

Two examiners reported that defendant has a mental disorder. One reported that he is not a danger to others and recommended that he be discharged. The other wrote "yes (?)" to whether he is a danger to others and recommended

---

[1] ORS 426.095(2) provides, in part:

"(a) Except as provided by paragraph (b) or (c) of this subsection, a hearing shall be held five judicial days from the day a court under ORS 426.070 issues a citation provided under ORS 426.090.

"* * * * *

"(c) If requested under this paragraph, the court, for good cause, may postpone the hearing for not more than five judicial days in order to allow preparation for the hearing."

that he be conditionally released. The court ruled that defendant has a mental disorder and is a danger to others and, therefore, is mentally ill. It conditionally released him. ORS 426.130(1)(b). 426.130(1)(b).

■■ Defendant asserts that his due process rights were violated, because he was not allowed to represent himself and because he was represented by an inadequate attorney.[2] Although we review equitable proceedings *de novo*, we review procedural rulings made in the course of those proceedings only for abuse of discretion. *See Holemar v. Holemar*, 35 Or App 111, 115, 580 P2d 1058, *rev den* 284 Or 1 (1978). Defendant claims that he had an "absolute right" to represent himself. However, the court had the authority to ensure that he was represented by counsel with the skill and experience necessary to defend him. ORS 426.100(3)(a). It was reasonable to conclude that appointed counsel could conduct his defense better than he could, particularly because his close friends and members of his extended family were to be witnesses. Moreover, during the hearing he frequently criticized his attorney, attempted to correct the judge and interrupted and insulted witnesses, thereby demonstrating that he was not capable of defending himself adequately. The court did not abuse its discretion when it refused to allow him to represent himself.

■ The court also did not abuse its discretion when it refused to dismiss defendant's appointed counsel at his request or to permit her to withdraw. *See In re Lathen*, 294 Or 157, 166, 654 P2d 1110 (1982). The court stated that the representation that defendant received was "of the highest quality," and nothing in the record suggests otherwise. Counsel asked to withdraw only after he threatened to sue her. Under difficult circumstances of defendant's own making, she represented him competently.

---

[2] Defendant relies on Article I, section 10, of the Oregon Constitution, and the Fourteenth Amendment. However, section 10 is "neither in text nor in historical function the equivalent of a due process clause." *Cole v. Dept. of Rev.*, 294 Or 188, 191, 655 P2d 171 (1982). Even assuming, in this proceeding, that section 10 requires a "fair and full hearing on the merits," *see Carter v. La Dee Logging Co.*, 142 Or 439, 459, 18 P2d 234, 20 P2d 1086 (1942), defendant makes no distinction between that right and any under the Fourteenth Amendment. *See Parratt v. Taylor*, 451 US 527, 537, 101 S Ct 1908, 68 L Ed 2d 420 (1981).

■ Defendant also asserts that he was denied due process, because the investigation that preceded the hearing was unfair in 2 respects: The investigator misled him as to how soon the hearing would take place and did not take long enough to complete the investigation. The court, after receiving the investigator's report, determines when a hearing will take place. ORS 426.070(5)(a). Although an investigator may take up to 15 days to complete the investigation, ORS 426.074(1)(b), there is no minimum time limit for it. Defendant does not assert that the investigation report was in any way inaccurate or incomplete. He has not established any due process violation.

■ Defendant also asserts that the state failed to prove by clear and convincing evidence that he is mentally ill. He argues that he has no mental disorder and that he is not a danger to others. However, he acknowledged at the hearing that he had suffered longstanding clinical depression and had received psychiatric treatment for a manic depressive disorder. Both examiners diagnosed him as having a mental disorder, and we agree.

Defendant also posed a danger to others. Although he had not committed any overt violent act against anyone, there was ample evidence to form a foundation for predicting that he would. *See State v. Woolridge,* 101 Or App 390, 394, 790 P2d 1192 (1990). In the weeks before the hearing, he began to speak obscenities frequently for the first time in his life and made vulgar sexual references to friends and family members. He made graphic threats to kill at least 4 people and acted violently when faced with everyday frustrations, such as shifting a manual transmission or fitting a key into a lock. His closest friends and family members were frightened of and for him. The court stated:

> "What the record does not reflect that is my real concern isn't just what I have heard that was said. That concerns me because it's not the Mr. Pieretti that anybody knows. But the record as transcribed does not reflect the vehemence, the uncontrollableness, the anger, the agitation, the truly emotional content of that. * * *

> "Mr. Pieretti has truly lost the ability to control himself or he wouldn't have behaved the way he did for five days in the courtroom. That's a place in which he has functioned for

years admirably, and he did not function admirably here for the last five days.

"That behavior added to the threats causes me to feel that those threats are more than idle, vague comments on his part because his loss of control is so great. I absolutely hear he has not acted on those threats. But they concern me greatly, and I think they ought to concern all of the people to whom they have been made * * *."

We conclude that defendant is mentally ill.

Affirmed.