In re KRIMBEL TRUCKING CO., INC., Bankrupt.

Larry B. FEINSTEIN, as Trustee of the Estate of Krimbel Trucking Co., Inc., Bankrupt, Plaintiff,

v.

AFCO CREDIT CORPORATION, Defendant.

Bankruptcy No. B77–1737S.

United States Bankruptcy Court, W. D. Washington, at Seattle.

Aug. 23, 1979.

---

1. The distinction is discussed in Cowans, *supra,* § 73, and in *Collier on Bankruptcy,* 14th ed., ¶ 62.32[1].

Eugene J. Craig, Seattle, Wash., for trustee Larry B. Feinstein.

John T. Petrie of Lycette, Diamond & Sylvester, Seattle, Wash., for defendant AFCO.

## MEMORANDUM OPINION

KENNETH S. TREADWELL, Bankruptcy Judge.

### FACTS

The Krimbel Trucking Co., Inc. was adjudicated a bankrupt on February 27, 1978, upon an involuntary petition filed on November 4, 1977.

On June 3, 1977, Krimbel applied for truck insurance through R. H. Lundberg and Co., agent. The insurance was placed by the agent with National Indemnity Company and Marine Office of America Corporation and the original policies were delivered to Krimbel on or about that date.

In order to finance premiums of $32,-317.00 Krimbel entered into a premium financing agreement with AFCO Credit Corporation on July 11, 1977. At that time the bankrupt made a cash payment of $8,000 and the balance of $24,317.00 was paid by AFCO.

The premium finance agreement provides for repayment by Krimbel in nine monthly payments of $2,792.75. As security for this obligation Krimbel assigned to AFCO "any and all unearned return premiums and dividends which may become payable under the policies . . . and loss payments under said policies which reduce the unearned premiums".

Neither the premium finance agreement nor any financing statement was filed with the King County Recorder or the State of Washington. AFCO did send a notice of

premium financing to the agent for National Indemnity on July 15, 1977.

The policies were cancelled on November 13, 1977. The unearned premiums were returned by the insurers to the agent Lundberg who remitted the sum of $13,963.75 to AFCO Credit Corporation satisfying the balance due under the premium financing agreement and remaining funds were turned over to the Trustee in Bankruptcy.

## ISSUE

The only question to be answered in this case is whether AFCO Credit Corporation's security interest in the unearned insurance premiums due upon cancellation of the insured's policy was perfected and valid against the Trustee in Bankruptcy solely by virtue of the provisions of the State of Washington's Insurance Premium Financing Company Act (RCW 48.56).

## DISCUSSION

■ It must be first determined whether Article 9 of the Uniform Commercial Code applies to a premium finance agreement. That it does not is made clear by R.C.W. 62A.9–104(g) which provides that Article 9 does not apply "to a transfer of an interest or claim in or under any policy of insurance".

Further, the Insurance Premium Company Finance Act, R.C.W. 48.56.130 provides:

"No filing of the premium finance agreement shall be necessary to perfect the validity of such agreement as a secured transaction as against creditors, subsequent purchasers, pledgees, encumbrancers, successors, or assigns."

■ It is a well-established rule that where there are concurrent general and special statutes, including the same subject matter, the special act is considered to be an exception to, or qualification of the general statute. *Wark v. National Guard*, 87 Wash.2d 864, 557 P.2d 844 (1976). This is particularly true where the special statute is passed subsequent to the general statute, as was the case here. *State v. Walls*, 81 Wash.2d 618, 503 P.2d 1068 (1972).

■ If Article 9 does not apply, the Trustee argues, AFCO's security interest in the unearned premium payments should have been perfected by possession of the policy. The general rule is that the proceeds of an insurance policy may be pledged or assigned as security for the payment of a debt. *Sun Life Assurance Company of Canada v. Weyen*, 136 F.Supp. 582 (D.Wash.1955).

■ There is grave doubt in my mind that a security interest in unearned premiums due upon cancellation of a policy can be created merely by a pledge of the policy. A pledge of a document is generally only available as collateral security where the document delivered represents the right transferred to the extent that it stands in place of, or embodies, the intangible. The right embodied in an insurance policy is the right to receive the proceeds under the policy and this is the right generally pledgeable through delivery.

■ In any case, it is clear that a secured creditor's right to the return premiums is a right which may be created by assignment. R.C.W. 48.56.130 obviously contemplated such an assignment when it alleviated the necessity of filing to perfect the secured creditor's interest. The right to repayment of unearned premiums is not only a contractual right granted by the instrument. It is also a statutory right set forth in R.C.W. 48.18.290, which provides

"*Cancellation by insurer.* . . .
(4) The portion of any premium paid to the insurer on account of the policy, unearned because of the cancellation and in amount as computed on the pro rata basis, must be actually paid to the insured or other person entitled thereto as shown by the policy . . ."

The laws of the State of Washington further provide, R.C.W. 48.56.120, where premiums have been advanced by a premium finance company, as follows:

"*Return of unearned premiums* —
(1) Whenever a financed insurance contract is canceled, the insurer shall return whatever gross unearned premiums are due under the insurance contract to the

premium finance company for the account of the insured or insureds.

(2) In the event that the crediting of returned premiums to the account of the insured results in a surplus over the amount due from the insured, the premium finance company shall refund such excess to the insured . . ."

The right to unearned premiums, therefore, is a right which may be properly assigned, whether or not a pledge of the policy would also be proper.

Finally, the Trustee argues that he may void the security interest of AFCO by reason of Sec. 70(c) of the Bankruptcy Act which gives him the rights and powers of

(3) "a creditor who upon the date of bankruptcy obtained a lien by legal or equitable proceedings upon all property, whether or not coming into the possession or control of the court, upon which a creditor of the bankrupt on a simple contract could have obtained such a lien, whether or not such creditor exists . ."

He maintains that since R.C.W. 48.-56.130 does not specify "lien creditor" his rights are superior to the rights of AFCO. There can be no doubt that the word "creditor" in the statutes includes "lien creditors" for the statute protects the secured interest of the premium finance company against all possible claimants even "subsequent purchasers" of the insured.

### HOLDING

The premium finance agreement assigning unearned premiums to the premium finance company created a perfected and valid security interest that cannot be voided by the Trustee.