Argued and submitted April 6, accused found guilty of one charge and given public reprimand July 19, 1983

In re: Complaint as to the conduct of

# JACK E. COLLIER,
*Accused.*

(OSB 79-63 and 80-42, SC 29105)

667 P2d 481

William M. Beers, Portland, argued the cause and filed the brief for the Oregon State Bar.

Gerald R. Pullen, Portland, argued the cause and filed the brief for the accused.

Before Lent, Chief Justice, Peterson, Campbell, Carson, and Jones, Justices.

PER CURIAM

## PER CURIAM

The Oregon State Bar filed a complaint against Jack E. Collier accusing him of unethical conduct in two separate causes. The first cause involves Collier's alleged failure to file a reply to a counterclaim which resulted in a default judgment being entered against his client. The second cause concerns a different matter wherein it is alleged that Collier failed to prepare and submit an order when requested to do so by a judge.

The Trial Board found that Collier was guilty of a portion of the first cause of complaint and not guilty of the second cause and the remaining portion of the first cause. It recommended that Collier be given a public reprimand and placed on probation for a period of six months on the condition that he "demonstrate a system of docket control satisfactory to the Professional Liability Fund."

The four member Disciplinary Review Board concurred in the Trial Board's findings and recommendations. We find Collier guilty only of neglecting a legal matter entrusted to him as charged in the first cause of complaint.

As to the first cause of complaint, the following facts are undisputed. Collier was admitted to the Oregon State Bar in 1964. A short time later, he became acquainted with Albert D. Dering who was in the nursery and landscape business. Collier began representing Dering and in the years that followed represented him in approximately 25 court cases and one bankruptcy.

On August 28, 1975, Collier filed a complaint in the Multnomah County Circuit Court for Dering against Westbrook Homeowners Association praying for the sum of $5,199.37 alleged to be due on a landscaping and maintenance contract. Westbrook Homeowners Association filed an answer and counterclaim. Collier, on behalf of Dering, prepared and filed a motion to strike certain portions of the counterclaim. The motion to strike was denied by Presiding Judge Olsen. The order denying the motion is dated March 1, 1976, and recites that the plaintiff failed to appear. It granted the plaintiff Dering a period of 10 days in which to file his next appearance.

On March 23, 1976, the defendant moved for an order of default on the counterclaim on the grounds that plaintiff

had failed to reply. The motion for default has attached to it a certificate of mailing showing that a "true, full and exact copy thereof" had been mailed to Collier. On March 30th Judge Olsen entered a default for the want of a reply and gave the defendant judgment against the plaintiff Dering on the counterclaim for the sum of $8,783.50 with costs in the sum of $20.90.

On April 7, 1976, the defendant, apparently to cover all its bases under former ORS 18.080(1)(b),[1] filed a further motion for a judgment on the counterclaim. The judge set the motion down for hearing on May 19, 1976, to take the necessary proof pursuant to the statute. The motion also has attached to it a certificate showing proof of mailing to Collier. May 26, 1976, Judge Olsen entered an amended order and judgment which recited "that a hearing was held on May 19, 1976, at which the Court took proof pursuant to ORS 18.080(1)(b)" and awarded the defendant a judgment against Dering on the counterclaim in the sum of $8,283.50,[2] costs in the sum of $20.90 and attorney fees in the sum of $1,000. Once

---

[1]

"18.080 Default Judgment. (1) Judgment may be had upon failure to answer, as prescribed in this section. When it appears that the defendant, or one or more of several defendants in the cases mentioned in ORS 18.135, has been duly served with the summons, and has failed to file an answer with the clerk of the court within the time specified in the summons, or such further time as may have been granted by the court or judge thereof, the plaintiff shall be entitled to have judgment against such defendant or defendants, as follows:

"* * * * *

"(b) In other actions, the clerk, upon written motion of the plaintiff being filed, shall enter the default of the defendant, and thereafter the plaintiff may apply to the court for the relief demanded in the complaint. The court shall, upon such application, give judgment for the amount prayed for in the complaint, or the relief demanded in the complaint, unless it is necessary, to enable the court to give judgment or carry the same into effect, to take proof of any matter of fact, in which case the court may order the entry of judgment to be delayed until such proof is taken. The court may hear the proof itself, or make an order of reference, or that a jury be called to inquire thereof. Thereupon the court shall enter judgment in accordance with its own findings, or the verdict of the jury; provided, however, that in all cases where the cause of action is for unliquidated damages, if a jury is demanded by either party to assess the damage, the court must grant such jury trial. If neither party demands a jury the damage may be assessed by the court.

[2] The total amount prayed for by the defendant in the counterclaim was $8,783.50. On March 30, 1976, the presiding judge entered a judgment for the defendant on the counterclaim in the full amount of the prayer; however, after taking testimony pursuant to ORS 18.080, the judge on May 26, 1976, entered judgment for the reduced amount of $8,283.50.

again the order has attached to it a certificate showing proof of mailing to Collier.

The case was set for trial on September 15, 1976, before Circuit Judge Crookham. Collier appeared for trial with a proposed reply and a motion for a continuance. He was accompanied by Dering, Dering's wife, and prospective witnesses. The judge called Collier and the defendant's counsel into chambers and advised them because of the previous judgment on the counterclaim, there were no issues to try. On September 22nd Judge Crookham entered an order dismissing Dering's complaint on the ground "the [default] Order entered herein and the record of this case has obviated all of the issues before this Court."

On February 25, 1977, Dering, through another lawyer, moved to set aside the judgment "by reason of the mistake" of his previous lawyer Jack E. Collier. The affidavit of Dering and a proposed reply were attached to the motion. The motion was denied on April 12, 1977 by Judge Olsen. Thereafter, Dering sued Collier for malpractice and obtained a judgment for general damages of approximately $8,000 plus punitive damages in the sum of $5,000.[3] On January 2, 1980, Dering wrote a letter of complaint to the General Counsel of the Oregon State Bar.

The above course of events caused the Bar, on September 21, 1981, to file its complaint. The charging parts of the first cause are as follows:

"IV

"Despite notice from opposing counsel that the defendant intended to move the court for an order of default, the Accused failed to file a reply to the counterclaim on his client's behalf. The Accused also failed to appear at the hearing on the defendant's motion for a default order and the hearing on the defendant's motion for judgment on the counterclaim. The Accused was given prior notification of the date and time of each hearing.

---

[3] In February or March of 1982, Collier paid the sum of $5,000 on Dering's judgment. As of the hearing before the Trial Board in April, 1982, no other sum had been paid on the judgment.

"V

"On or about May 26, 1976, the defendant obtained a default judgment against Albert D. Dering on the counterclaim, and thereafter Dering's claim was denied by the court. The Accused did not inform his client of the default judgment or of the dismissal of Dering's claim, but advised his client that the matter was being assigned to a different judge for consideration, when in fact the Accused knew this to be untrue.

"* * * * *

"VII

"The aforesaid conduct of the Accused was unethical, unlawful and in violation of the standard of professional conduct established by law and by the Oregon State Bar in one or more of the following respects:

"1) Neglecting a legal matter entrusted to him. DR 6-101(A)(3).

"2) Prejudicing or damaging his client during the course of the professional relationship. DR 7-101(A)(3).

"3) Misrepresenting the status of a case to a client. DR 1-102(A)(4); ORS 9.480(4)."

Collier's answer denied paragraphs IV, V, and VII quoted above, but by way of explanation alleged that he received "a trial notice setting the case for trial almost contemporaneously with the notice" of intent to take a default and "assumed the trial notice would prevent any default." Collier also alleged that when he appeared before the trial judge, he learned for the first time of the prior default judgment.

At the hearing before the Trial Board on April 16, 1982, Dering took a position consistent with paragraph V of the complaint. He testified that on the morning the case was set for trial, after Collier had been in the judge's chambers for 15 or 20 minutes, he came out and told Dering and Dering's wife the case had been set over to a later date. He testified further that Collier never did tell him that a default had been entered.

Commencing with the opening statement before the Trial Board, Collier admitted that he was negligent in failing to file a reply and in allowing the default to be taken against

Dering.[4] Collier's defense to the acts of negligence has been and now is that they were only "isolated acts of ordinary negligence" within the meaning of *In re Robert Neil Gygi,* 273 Or 443, 450-451, 541 P2d 1392 (1975), and "constitute only legal malpractice, rather than unethical conduct."

As to what happened on the morning of September 15, 1976, the day the case of *Dering v. Westbrook Homeowners Association* was set for trial, there is a sharp conflict in the testimony of Collier and Dering. Collier denied that he told Dering and his wife that the case had been set over to a later date. Collier testified he told the Derings that a default judgment had been entered and that he would have to go back before the presiding judge who had entered the judgment to have it set aside. He further explained that he intended to attempt to have the default set aside, but did not, and eventually the new lawyer hired by Dering filed the motion for that purpose.

Both the Trial Board and the Disciplinary Review Board chose to believe Collier's testimony as opposed to Dering's. The result was they found Collier guilty of neglecting a legal matter entrusted to him under DR 6-101(A)(3) and prejudicing or damaging his client during the course of the professional relationship under DR 7-101(A)(3). Both boards found Collier not guilty of misrepresenting the status of a case to a client under DR 1-102(A)(4) and ORS 9.480(4).[5]

■ This court makes an independent review of the evidence. *In re Robeson,* 293 Or 610, 629, 652 P2d 336 (1982). We

---

[4] Collier was represented at the hearing before the Trial Board by a lawyer and the opening statement was made by that lawyer.

[5]

"DR 1-102 Misconduct

   "(A)  A lawyer shall not:

      "(4)  Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

ORS 9.480:

   "The Supreme Court may disbar, suspend or reprimand a member of the bar whenever, upon proper proceedings for that purpose, it appears to the court that:

   "(4)  The member is guilty of wilful deceit or misconduct in the legal profession;"

find that on the morning of September 15, 1976, after the meeting with the trial judge in chambers, Collier told the Derings that a default judgment had previously been entered and that he would be required to go back to the presiding judge to have it set aside. In making this finding, we have taken into consideration that the Trial Board heard and saw the witnesses. *In re J. Kelly Farris*, 229 Or 209, 367 P2d 387 (1961). The result of this finding is that Collier is not guilty of misrepresenting the status of the case under DR 1-102(A)(4) and ORS 9.480(4).

The next question is whether Collier was guilty of prejudicing or damaging his client during the course of the professional relationship under DR 7-101(A)(3). The opinion of the Disciplinary Review Board in part is as follows:

"Although [Collier] did not misrepresent the status of the case to his client, his failure to proceed with the motion to set aside the default judgment despite his promises to do so was in violation of DR 7-101(A)(3)."

That portion of the disciplinary rule which is relevant to this case is:

"DR 7-101 Representing a Client Zealously.

"(A)    A lawyer shall not *intentionally:* [Emphasis added.]

"(3)    Prejudice or damage his client during the course of the professional relationship, * * *."

It is our opinion that Collier did not violate DR 7-101(A)(3) because (1) there is no proof that he *intentionally* failed to act, and (2) there is no pleading giving him notice that he was to be charged with failing to move to set aside the default.

The Bar in this case charged Collier with not informing Dering of the default judgment and the dismissal of the complaint, and falsely advising him that the case had been assigned to a different judge. The Trial Board and the Disciplinary Review Board both found the charge was not proven and they believed Collier's explanation that he told Dering a default judgment had been entered and he would have to go back to the presiding judge to have it set aside. What the two boards in effect are now saying to Collier is: "We believe your explanation, but because you did not follow through and move

to have the default set aside, you have prejudiced or damaged your client."

■     The trouble with the above finding is that Collier was not charged in the complaint with failure to move to set aside the default. An accused in a disciplinary matter is entitled to notice of the charges. *In re Chambers,* 292 Or 670, 676, 642 P2d 286 (1982).

Further, there is no evidence that Collier *intentionally* prejudiced or damaged his client.[6] "Intentionally" is a material and key element of DR 7-101(A)(3). None of the testimony, even from Dering, indicates that Collier intentionally wanted to harm anyone. All of the inferences to be drawn from the testimony is that Collier was negligent. He may have *negligently* prejudiced and damaged his client, but he did not *intentionally* do so. For these reasons we find Collier not guilty of violating DR 7-101(A)(3).

The only question remaining in the first cause of complaint is whether the admitted negligent acts of Collier constitute unethical conduct or only legal malpractice.

The disciplinary rule under which Collier has been charged is:

"DR 6-101 Failing to Act Competently.

"(A)    A lawyer shall not:

"* * * * *

"(3)    Neglect a legal matter entrusted to him."

Collier has cited us to *In re Robert Neil Gygi,* 273 Or 443, 450, 541 P2d 1392 (1975) wherein we said:

"[W]e are not prepared to hold that isolated instances of ordinary negligence are alone sufficient to warrant disciplinary action."

The Bar in turn cites us to *In re McCaffrey,* 275 Or 23, 28, 549 P2d 666 (1976) as follows:

---

[6] The Oregon State Bar's complaint does not allege that Collier "intentionally" prejudiced or damaged his client in violation of 7-101(A)(3). Because we find that this charge was not proven by the evidence we do not reach the pleading question. For a discussion of "intentional" conduct under 7-101(A)(3) *see In re Rudie,* 294 Or 740, 662 P2d 321 (1983); *In re Paauwe,* 294 Or 171, 654 P2d 1117 (1982).

"The accused contends this court has held that isolated instances of negligence are not grounds for discipline. That is too broad a statement. In *In re Robert Neil Gygi,* 273 Or 443, 450, 541 P2d 1392 (1975), we held an attorney's negligence in preparing a corporate annual report was not sufficient to warrant disciplinary action. However, we contrasted in *In re Marvin G. Hollingsworth,* 272 Or 319, 536 P2d 1244 (1975), in which we held that negligence in making court appearances and disbursing funds did warrant discipline.

"A breach of the Code is a subject of disciplinary action if done negligently and if the breach is apt to cause the harm the Code sought to prevent. Rule 7-104(A)(1) prohibits communicating with a person who is represented by counsel. The purpose of the rule is to prevent a person from being deprived of the advice of retained counsel by bypassing retained counsel. It is immaterial whether the direct communication is an intentional or a negligent violation of the rule."

We are not required to compare *Robert Neil Gygi, supra,* with *McCaffrey, supra.* In *Gygi* this court held that the accused's negligence in preparing an annual report was an isolated act of ordinary negligence. In this case Collier's failure to act was not an isolated act but a course of conduct. This is demonstrated by reviewing the events both before and after the last entry of judgment on the counterclaim.

The presiding judge's order of March 1, 1976, denying the plaintiff's motion to strike, recited that the plaintiff had failed to appear at the hearing thereof on February 26, 1976. Although Collier is not charged with unethical conduct for failure to appear at the hearing of a motion which he filed, it does seem to set the stage for the events that followed. The plaintiff was given 10 days from March 1st to file his next appearance. Collier missed this deadline. The defendant allowed approximately 12 days to elapse before it moved for a default on March 23rd. The presiding judge did not sign the order of default until March 30th, which gave Collier and his client an overall period of 30 days in which to appear instead of the 10 days set out in the order.

If Collier had been alert to what was happening in the case, he would have recognized the defendant's further motion of April 7th as a great unsolicited opportunity to purge himself of his previous negligence. The motion prayed for a judgment

pursuant to ORS 18.080(1)(b) on the counterclaim and requested the court to set the matter for hearing on May 19th. The case was in a suspended state from April 7th to May 19th—approximately six weeks—and Collier made no effort to set aside the previous default or file a reply. He did not appear at the hearing on May 19th and then seven days later, on May 26th, the judge entered an amended order and judgment.

The case lay dormant from May 26th until the "daily call" on September 14th, the day before the trial was to commence—a period of three months plus. Apparently during this time Collier made no effort to determine the status of the case in spite of the fact he admitted that he probably received the notices of the motions and copies of the orders and that they "got buried" in his "hectic practice."

On February 25, 1977, another lawyer, on behalf of Dering, moved to set aside the default judgment. Five months and ten days had elapsed since Collier had gone into Judge Crookham's chambers on September 15, 1976 and found out that there was not going to be a trial on the merits. During that period of time, Collier had done nothing to correct the situation. As we have previously said in this opinion, Collier is not charged with failing to set aside the default. However, it is a fact of life which has been admitted by Collier and we consider it as an aggravating circumstance to show a course of conduct.

We find that Collier's conduct was not "an isolated act of negligence" but a course of negligent conduct and that he is guilty of violating DR 6-101(A)(3).

The second cause[7] of complaint against Collier arose out of an entirely different set of circumstances. We adopt the following portion of the Disciplinary Review Board's opinion as our own:

---

[7] In the second cause of complaint Collier is accused of violating DR 6-101(A)(3) and ORS 9.480(3). DR 6-101(A)(3) is quoted in the text above and ORS 9.480(3) is as follows:

"The Supreme Court may disbar, suspend or reprimand a member of the bar whenever, upon proper proceedings for that purpose, it appears that:

"(3) The member has wilfully disobeyed an order of a court requiring the member to do or forbear an act connected with the legal profession;"

"The second cause involved the Accused's representation of Old American Company in a lien foreclosure suit against

Margaret Sullivan and Jerry Robichaud in the Multnomah County Circuit Court. On or about November 19, 1979, this matter was heard and the judge dismissed the suit, directing the Accused to draft and submit the order of dismissal. The Accused failed to timely submit the order, and the suit was ultimately dismissed on the court's own motion on or about February 21, 1980. The Accused testified that he did dictate the order, his typing arrangments with a shared secretary were substantially behind, and the form of order was ultimately submitted although subsequent to the court's own order. There is no contrary evidence on this matter. The finding of the Trial Board of not guilty on the second case was correct."

We find that on the first cause of complaint Collier is guilty of neglecting a legal matter entrusted to him in violation of DR 6-101(A)(3). Collier is not guilty of the balance of the complaint.

■ Both the Trial Board and the Disciplinary Review Board recommend that Collier receive a public reprimand. We agree. This opinion shall serve as a public reprimand.

Both the Trial Board and the Disciplinary Review Board recommend that Collier be placed on probation for a period of six months on the condition that he demonstrate a system of docket control satisfactory to the Professional Liability Fund.

We decline to place Collier on probation. We are not sure that the Professional Liability Fund is in any position to administer the proposed condition of probation or that it would be proper for it to do so. Beyond that, we observe this matter had its origin on March 30, 1976— over seven years ago. If a judgment for approximately $8,000 for general damages, a judgment for punitive damages in the amount of $5,000, the cost of defense in the civil action, the cost of defense before the Trial Board, the Disciplinary Review Board and this court in the disciplinary action, and seven years' worry do not get Collier's attention, then we seriously doubt that six months probation will help.

## Oregon State Bar is awarded costs.[8]

---

[8] Collier contends that in any event the Oregon State Bar is not entitled to costs because under former Rule 15 of the Rules of Procedure, the Bar's complaint was not filed "within 30 days after appointment of counsel for the bar." Collier relies upon *In re Gant,* 293 Or 359, 647 P2d 933 (1982), wherein we did not award costs to the Bar because the complaint was filed more than 30 days after the appointment of counsel.

Rule 15 of the Rules of Procedure was amended effective February 1, 1983 by deleting the former 30 day provision for the filing of the Bar's complaint. If there is a question of "retroactivity" we find that the change is procedural and not substantive. *Whipple v. Howser,* 291 Or 475, 632 P2d 782 (1981). The rule change was intended to apply to disciplinary matters under consideration as of the effective date, February 1, 1983.