Submitted on record April 26; resubmitted on record and briefs August 15, accused reprimanded September 7, 1983

In Re: Complaint as to the Conduct of

# G. BROCK HEREFORD,
*Accused.*

## (OSB 81-101, SC 29414)
668 P2d 1217

Teresa Ivey, Hillsboro, for the Oregon State Bar.

G. Brock Hereford, Pro Se.

PER CURIAM

Roberts, J., did not participate in this decision.

## PER CURIAM

The Oregon State Bar filed a complaint against G. Brock Hereford accusing him of unethical conduct in two separate causes. The first cause involves Hereford's conduct after he was retained by Sandra Letterman to prepare documents necessary to form an Oregon corporation and obtain a Subchapter S classification with the Internal Revenue Service.[1] The second cause involves Hereford's conduct in a civil case in Multnomah County wherein he had been retained to represent the defendant, Dale Fenske.

The Trial Board found Hereford guilty of all the charges in each cause of the complaint. It recommended that Hereford be given a public reprimand, be placed on probation for a period of two years, be required to complete successfully an examination in legal ethics, and be "counselled and monitored, if practicable, during probationary period, by the State Lawyer Assistance Committee." The five member Disciplinary Review Board concurred with the Trial Board's decision and its recommendations.

In its brief in this court the Oregon State Bar suggests that Hereford not be required to take an examination in legal ethics, but that he be suspended from the practice of law for a period of 30 to 60 days.

This court finds Hereford guilty of only one charge in each of the causes of complaint and not guilty of the balance of the charges. We give Hereford a public reprimand without further sanction.

On July 6, 1982, the Oregon State Bar filed its complaint against Hereford. The charging parts of the first cause are:

"III

"* * * [O]ne Sandra Letterman retained the Accused to prepare documents necessary to form an Oregon corporation

---

[1] A certified public accountant in testifying before the Trial Board described a "Subchapter S corporation" as follows:

"Under the Internal Revenue Code, if you elect * * * to be treated under a Subchapter S, the income and deductions and so on are passed through [to] the individual's return, * * * so that the tax on the income or deductions arising from any losses are taken and paid at the individual's level and not the corporate level."

and to obtain a Sub-chapter S classification with the Internal Revenue Service.

## "IV

"The Accused failed and neglected to complete the necessary documents for the legal matter entrusted to him by his client contrary to Disciplinary Rule 6-101(A)(3) of the Code of Professional Responsibility.

## "V

"The Accused failed and neglected to carry out the contract of employment by failing to redraft said documents until they were accurate and complete, which failure resulted in damage and prejudice to his client, contrary to Disciplinary Rule 7-101(A)(2) and (3) of the Code of Professional Responsibility."

The Disciplinary Rules relevant to this case are:[2]

"DR 6-101 Failing to Act Competently.

    (A)   A lawyer shall not:

         \* \* \*

         (2)   Handle a legal matter without preparation adequate in the circumstances.

         (3)   Neglect a legal matter entrusted to him.

         "DR 7-101 Representing a Client Zealously.

    (A)   A lawyer shall not intentionally:

         \* \* \*

         (2)   Fail to carry out a contract of employment entered into with a client for professional services, \* \* \*.

         (3)   Prejudice or damage his client during the course of the professional relationship, \* \* \*."

On November 16, 1982, Hereford and counsel for the Oregon State Bar entered into a stipulation of facts. As to the first cause, the stipulation in part provides:

"2. The accused did not transmit to Ms. Letterman documents in a timely, accurate manner. The accused further did not redraft the corporation documents until they were accurate and complete.

---

[2] The first cause of complaint does not charge a violation of DR 6-101(A)(2), but a violation of that rule is charged in the second cause.

"3.   The accused did not maintain contact with Ms. Letterman despite her frequent attempts to reach him by telephone; the accused further did not appear for six scheduled appointments at his client's office, only three of which absences were explained.

"4.   The accused did not establish that the Sub-chapter S election was filed in a timely manner."

On November 30, 1982, a hearing was held before the Trial Board. The testimony before the Trial Board was scant—apparently, because the parties did not consider it necessary to supplement fully the stipulation.

Letterman's testimony indicated that the corporate documents referred to in paragraph 2 of the stipulation were the by-laws and minutes. This is confirmed in part by Hereford's brief in this court:

"The corporate minute book had inaccuracies which Ms. Letterman wanted to have corrected, including typographical errors and misspelling of names. An accurate redraft of the corporate minute book of Ms. Letterman was not provided to her."

As to paragraph 3 of the stipulation, Hereford testified generally as to his failure to keep in touch with Letterman, but there are no references as to particular times and places. The record does not describe the nature or purpose of the six scheduled appointments at Letterman's office which Hereford failed to keep.[3]

The most serious allegation by the Oregon State Bar in the first cause of complaint is that Hereford "failed and neglected to complete the necessary 'document' to obtain a Sub-chapter S classification."

The Bar in its trial memorandum said that the only issues of fact to be decided in the first cause by the Trial Board were:

---

[3] The only reference to the appointments in the transcript of testimony is of a negative nature. Letterman testified on direct examination:

"Q.  Now, Mr. Hereford has stipulated that he did not maintain contact with you and missed several scheduled appointments. Were any of those appointments made to determine whether a Subchapter S election had been filed.

"A.  No."

"Did the accused's *failure to file* a Sub-Chapter S election with the Internal Revenue Service result in payment of additional taxes by Sandra Letterman, and in what amount?" (Emphasis added.)

The above issues as framed by the Bar assumes a fact not stipulated by Hereford. He did not stipulate that he "failed to file" the election, but instead did stipulate that he "did not establish that the * * * election was filed in a timely manner."

Letterman was a travel agent who employed Hereford on February 27, 1981 to form a corporation to be known as "Travel Advisors, Inc." The deadline for filing the Sub-chapter S election was May 14, 1981.

On March 4, 1981, Hereford mailed to Letterman the following letter:

"Enclosed are two originals and one file copy of Form 2553 which is to be signed by you as the sole stockholder. Upon signing and dating the two originals mail them to the address I marked on the forms.

"These forms give you 'Subchapter S' tax treatment to eliminate the possibility of double taxation. I doubt if there will be much need for this election the first three years of your operation."[4]

Letterman testified that she did not receive the above quoted letter. The Trial Board did not make any specific findings. It is undisputed that the Sub-chapter S election was not filed. Both Letterman and her certified public accountant testified that her additional tax liability for 1981 was the sum of $4,941.28. At the time of the hearing before the Trial Board, Letterman had a malpractice action against Hereford pending in the Multnomah County Circuit Court praying for the same amount.

We find that the phrase in paragraph 4 of the stipulation, "did not establish that the * * * election was filed in a timely manner" is ambiguous. The parties intended it to mean "did not follow through and see that the election was filed in a

---

[4] Even if Letterman had received Hereford's letter of March 4, 1981, hindsight shows that it falls short in the following respects: (1) it casts upon the client instead of the lawyer the responsibility of the mailing of the election form, (2) it does not advise the client of the deadline, and (3) it could be interpreted as meaning that it was not necessary to file the form for a period of three years.

timely manner." As to damages, this may be a distinction without a difference because in either event the election was not filed and the client suffered the possible additional tax liability, but it has a bearing upon the degree of Hereford's admitted neglect for disciplinary purposes.

Hereford has admitted by the stipulation and by his brief in this court that he was negligent. He contends that his conduct was made up of isolated acts of negligence which do not warrant disciplinary action. He cites *In re Robert Neil Gygi,* 273 Or 443, 450-451, 541 P2d 1392 (1975), to support his position.

This court makes an independent review of the evidence. *In re Robeson,* 293 Or 610, 629, 652 P2d 336 (1982). The charges must be proved by clear and convincing evidence. *In re Thomas,* 294 Or 505, 521, 659 P2d 960 (1983).

Paragraph IV of the first cause of complaint is a general allegation. It in effect says:

"Hereford failed and neglected to complete the necessary documents to form an Oregon corporation and obtain a Sub-chapter S classification for Letterman in violation of DR 6-101(A)(3)."

There is evidence in the record from which we infer that the articles of incorporation of Travel Advisers, Inc. were properly prepared and filed. The only other documents mentioned in the record are the minutes, by-laws, and the election form for the Sub-chapter S corporation. We find from the stipulation and the record that Hereford did not complete and transmit the minutes and by-laws to Letterman in a timely and accurate manner and did not follow through and see that the Sub-chapter S election was filed. Because of this conduct and the further fact that Hereford did not keep six scheduled appointments with Letterman, we find him guilty of neglecting a legal matter entrusted to him under DR 6-101(A)(3). Hereford's conduct was not an isolated act of negligence but a course of negligent conduct. *See In re Collier,* 295 Or 320, 667 P2d 481 (1983).

Paragraph V of the first cause of complaint is a specific allegation. It refers only to the failure to *redraft* documents. The record makes reference only to the redrafting of

the corporate minutes and by-laws. Paragraph V, in view of the proof, in effect says:

> "Hereford failed and neglected to carry out the contract of employment by failing to redraft the corporate minutes and bylaws until they were accurate and complete, which failure resulted in damage and prejudice to Letterman, contrary to DR 7-101(A)(2) and (3)."

■ ■  We find Hereford not guilty of violating DR 7-101(A)(2) and (3). There is no evidence that Hereford *intentionally* failed to carry out the contract of employment or that he *intentionally* prejudiced or damaged his client.[5] "Intentionally" is a material and key element of both DR 7-101(A)(2) and (3). *In re Collier, supra.*

Further, there is no evidence in the record to show that Letterman was actually damaged or prejudiced by Hereford's failure to redraft the minutes and by-laws. Letterman testified on cross examination by Hereford:

> "Q.   Okay. Now, there were mistakes, typographical and name mistakes in the first two drafts of the bylaws and minutes given you?
>
> "A.   Yeah, no—nothing, no signature, nothing.
>
> "Q.   Do you recall my saying to you, 'We can change those by writing in and initialing in the margins'?
>
> "A.   No.
>
> "Q.   You don't ever recall that?
>
> "A.   No.
>
> "Q.   Even in your office when I came over with the last draft of the by-laws of the minutes?
>
> "A.   The amounts and stuff were not in there."

---

[5] The Bar cites *In re Loew,* 292 Or 806, 810-811, 642 P2d 1171 (1982), as follows:

> "At some point, the accused's continuing act of omission, extending over a year, could no longer be characterized as procrastination. His failure to act despite the urgings of the client and the client's second lawyer, and despite his own knowledge of his professional duty to act, must be characterized as intentional conduct."

It is impossible to draft a rule which defines when negligent conduct turns into intentional conduct. Each case must be decided on its own facts. Here we do not have enough information to attempt to make that determination. The Oregon State Bar has the burden of proof by clear and convincing evidence. *In re Thomas, supra.*

■ There is no doubt that Hereford did a sloppy and negligent job. He has been found guilty of it under DR 6-101(A)(3). Actual damage and prejudice is another thing. A client's inconvenience, exasperation and frustration do not necessarily add up to damage and prejudice, and the Bar proved nothing else.

The Oregon State Bar's second cause of complaint involves Hereford's conduct in a case in which he had been employed to represent Dale Fenske. The defense of the case had been referred to Hereford by another attorney. Fenske was a building contractor who had been sued by a homeowner for breach of contract and unlawful trade practices. By pretrial motion Hereford was successful in having the allegations of the complaint as to unlawful trade practices, including punitive damages and attorney fees, stricken. After the trial of the case had been postponed twice, Fenske hired another attorney, Roger Kromer, to represent him.

The charging parts of the Bar's second cause of complaint against Hereford are:

"X

"The Accused failed and neglected to complete the legal matter entrusted to him by causing unnecessary delays in the subject lawsuit and by failing to respond to requests by his former client's attorney to make available documents necessary for trial or to communicate with that attorney, contrary to Disciplinary Rule 6-101(A)(2) and (3) of the Code of Professional Responsibility.

"XI

"The Accused failed and neglected to carry out the contract of employment with his client by failing to conduct the latter's defense in a timely manner or withdrawing as permitted under the Disciplinary Rules, such failure resulting in delay and subsequent prejudice to his client, contrary to Disciplinary Rule 7-101(A)(2) and (3) of the Code of Professional Responsibility."

The stipulation entered into between Hereford and the counsel for the Oregon State Bar as to the second cause of complaint in part provides:

"6. On September 17, 1981, Mr. Fenske retained attorney Roger Kromer to undertake his defense. On September 29, 1981, Mr. Kromer corresponded with the accused to obtain the

file. On October 28, 1981, the accused telephoned Mr. Kromer and agreed to transmit the file.

"7.   The accused did not transmit the client file or adequately communicate with Mr. Kromer until February 12, 1982, despite numerous attempts by Mr. Kromer to reach the accused and obtain the file. Such failure resulted in a reset of a January 11, 1982, trial date.

"8.   The accused prepared an Answer, Affirmative Defense and Counterclaim which was included in the client file, but which was not filed with the Court. Such a lack of filing resulted in a reset of a July 26, 1982 trial date by Mr. Kromer. The accused had filed a general denial which did not raise the affimative defense and counterclaim."

Paragraph XI of the second cause necessarily refers to the period of time prior to September 17, 1981 when Fenske replaced Hereford with Kromer as his lawyer. The records shows that there were two postponements of the trial during that period of time—one in May, 1981, and one in early September, 1981.[6] The trial in May was postponed because Hereford had a dental problem. The case was set-over in September because Hereford had a conflict with a Clackamas County Circuit Court case. There is no evidence in the record from which it could be inferred that the two postponements were not proper and reasonable. There is evidence that Hereford did not inform his client of the postponements and that the client went to the courthouse on the appointed dates expecting the case to be tried. It can be inferred that Fenske was inconvenienced but there is no evidence that he was actually damaged—such as suffering a financial loss from taking a day off work. Further, in the case of the dental problem in May, 1981, it is not known whether Hereford had an opportunity to so advise Fenske. We do not approve of Hereford's failure to notify his client of the second postponement, but by such conduct he did not intentionally "fail and neglect to carry out a contract of employment * * * to the subsequent prejudice of his client." Hereford is not guilty of violating DR 7-101(A)(2) and (3) as charged in paragraph XI of the second cause.

Paragraph X of the second cause refers to the period of time after Hereford had been discharged on September 17,

---

[6] Fenske also testified that there was a postponement of a motion for summary judgment. There is no contention that it was necessary for Fenske to be present at that hearing.

1981. Paragraphs 6, 7 and 8 of the stipulation of facts all refer to the charges in paragraph X of the second cause and that same period of time. Hereford admits that he was negligent and responsible for the postponement of the trials on January 11, 1982, and July 26, 1982.

It is clear from the stipulation of facts that Hereford promised to transmit the case file to Kromer on October 28, 1981, but did not do so until February 12, 1982, despite numerous attempts by Kromer to contact him. The result was a postponement of the January 11, 1982 trial date. When Kromer got the case file he found in it an answer, affirmative defense and counterclaim, and assumed that they had been filed with the Clerk of the Court. Kromer did not find out until shortly before the trial date of July 26, 1982 that the only answer in the court file was a general denial. This resulted in a further postponement. Hereford admits his responsibility for the postponement in his brief in this court:

> "Additionally, * * *, the January 11, 1982 and the July 26, 1981, set-overs rightfully should be attributed to the Accused. * * * Initially for strategic reasons the Accused did not want to file the Answer, Affirmative Defense and Counterclaim. The prudent thing to do would have been to review the file with Mr. Kromer personally and not presume he would take certain actions. * * *"

Hereford's negligence in causing the January 11, 1982 and July 26, 1982 set-overs was a course of conduct and not isolated acts of negligence. *In re Collier, supra.* He is guilty of neglecting a legal matter entrusted to him in violation of DR 6-101(A)(3). He is not guilty of handling a legal matter without preparation adequate in the circumstances under DR 6-101(A)(2).[7]

In the nature of confession and avoidance, Hereford explains his conduct by saying that between September, 1981, and April, 1982, he moved his office seven times and therefore was not always available to his clients. One of the reasons he

---

[7] Paragraph X of the second cause of complaint alleges Hereford violated DR 6-101(A)(2). There was no attempt by the Bar to prove that he handled a legal matter without adequate preparation. We have found no evidence in the record that would justify this charge. Including DR 6-101(A)(2) in the complaint may have been a typographical error.

moved his office was to escape from his former wife. In his trial memorandum Hereford described the situation:[8]

"My domestic situation, I married in December, 1976, led to a progressive deterioration in my own self-esteem which had a direct impact on my practice. To maintain some sense of worth I took on more and more cases but my capacity to service those cases was lessened progressively. With continual bombardment on the home front, physical and emotional abuse from my former spouse—at home and at the office, I frankly became over-sensitized to criticism whereby I could not respond. I was actually fearful to be in my office due to the barrage of telephone calls and the fear of an unannounced visit from my spouse. In one instance in particular, I was extremely embarrassed one morning [during] the course of a client interview when my wife barged into my office. Consequently, it was not a matter of two separate and distinct facets of worklife-home life. The domestic turmoil forcefully spilled over into my worklife by a force, my former spouse, that I could not control. My lack of response to these two clients and inquiries from the General Counsel's office was inappropriate. However, it was not by design. I had taken on the posture of not being able to respond and not defending myself, which arose out of the domestic turmoil."

Hereford testified before the Trial Board that he had been divorced from his previous wife and that his troubles are over. He has recently married a different woman and gives the inference that he now has a stable home. For a period of approximately eight months covering the period of January to August of 1982, Hereford did not take any new cases to allow himself a period in which to evaluate his practice and problems. Previous to that time, he had about 120 open files. He now confines his practice to about 35 cases. He has adopted the Bar's recommended tickler system and integrated it into his office set-up. In response to a question from the Trial Board, he indicated that he was willing to associate counsel on some cases. Hereford has adopted a program to observe trials in Multnomah and Washington counties.

■ Although Hereford's domestic difficulties do not excuse his violations of the Disciplinary Rules, we take his personal situation into account in determining a proper sanction.

---

[8] The recital of the facts of the marital difficulty from the trial memorandum has become a part of the record at the invitation of the chairman of the Trial Board and without objection by the Bar.

This follows our practice in previous disciplinary review cases. *In re Loew,* 292 Or 806, 642 P2d 1171·(1982) ("burnt out syndrome"); *In re Varnes,* 285 Or 463, 591 P2d 366 (1979) (mental illness); *In re James H. Lewelling,* 244 Or 282, 417 P2d 1019 (1966) (excessive use of intoxicating liquor).

■      Here, as opposed to the *Loew, Varnes,* and *Lewelling* cases, Hereford does not have an ongoing, continuing problem. Therefore, there is no need to place Hereford on probation to protect the public. We agree with the Oregon State Bar that an examination in legal ethics is not necessary. He has not demonstrated that he was unaware of the ethical standards for lawyers. In his brief in this court, he frankly admitted that his conduct was below the standard that he had set for himself and "obviously what the public expects from members of the bar." For his violation of DR 6-101(A)(3) in each cause Hereford will receive a public reprimand.

By way of summary, we find by clear and convincing evidence that Hereford is guilty of neglecting legal matters entrusted to him under DR 6-101(A)(3) in both the first and second causes of complaint. He is not guilty of the other violations alleged in the complaint. This opinion shall serve as a public reprimand.

The Oregon State Bar is awarded costs.