Submitted on record and briefs April 7, accused suspended from the practice of law for 126 days June 7, 1988

In re Complaint as to the Conduct of

## G. BROCK HEREFORD,
*Accused.*

### (OSB 86-89 and 86-90; SC 29414)

756 P2d 30

Donald L. Williams, Lake Oswego, for the Oregon State Bar.

No appearance contra.

PER CURIAM

## PER CURIAM

The Oregon State Bar filed a complaint against G. Brock Hereford accusing him of unethical conduct in four separate causes. Causes one and two allege a violation of DR 6-101(B) ("A lawyer shall not neglect a legal matter entrusted to the lawyer.") Causes three and four allege violations of DR 1-103(C) ("A lawyer who is the subject of a disciplinary investigation shall respond fully and truthfully to inquiries from and comply with reasonable requests of a tribunal or other authority empowered to investigate or act upon the conduct of lawyers, subject only to the exercise of any applicable right or privilege.")

The trial panel found the accused guilty of the third and fourth charges and suspended him from the practice of law for two years, "with all but ninety (90) days of that suspension stayed, subject to the Accused's compliance with probationary terms for a period of two years." Supreme Court review is automatic in such cases. ORS 9.536(2) provides that "[i]f the decision of the disciplinary board is to suspend the accused attorney for a period longer than 60 days or to disbar the accused attorney, the matter shall be reviewed by the Supreme Court. * * *" The Bar has filed a petition for review in which it "petitions the Supreme Court to adopt the findings and the decision of the trial panel contained in its opinion and disposition dated January 12, 1988." We review de novo. ORS 9.536(3).[1]

The first and second causes relate to representation of clients named McKee and Brown. On these claims, the trial panel found:

"The direct testimony of both McKee and Brown established that the Accused was less than diligent in maintaining communications with, and failed to promote understanding with, these two clients, during his representation of each of them. On the other hand the further testimony of the clients and exhibits received, evidenced that the Accused did attend to the interests of his clients although not with the promptness they were led to expect. On balance, the panel found that all

---

[1] ORS 9.536(3) provides:

"When a matter is before the Supreme Court for review, the court shall consider the matter de novo and may adopt, modify or reject the decision of the disciplinary board in whole or in part and thereupon enter an appropriate order."

the evidence was not sufficient to meet the burden to prove clearly and convincingly that the Accused had neglected legal matters entrusted to the Accused by these clients. Accordingly, the panel concluded that the conduct of the Accused, although less than admirable, did not violate DR 6-101(B) as alleged by the Complaint."

After reviewing the testimony and exhibits, we adopt that finding as our own, and conclude that DR 6-101(B) was not violated.[2]

On the third and fourth causes, the panel found:

"The panel finds and concludes that the Accused without any applicable right or privilege, and without even asserting one appropriately, failed to respond fully and to comply with reasonable requests by the Bar's General Counsel as an authority to investigate the conduct of lawyers. Also the panel finds that the Accused, despite his suspended status, was a lawyer subject to disciplinary investigation, and, that at least for a time it was his intentional strategy to attempt to avoid investigation and its consequences. Accordingly the panel concludes the Accused did, by his conduct, clearly violate DR 1-103(C)."

The accused was suspended from the practice of law on July 11, 1986, for nonpayment of his professional liability fund assessment. A second suspension, for nonpayment of bar dues, issued on July 22, 1986. ORS 9.200. The Bar, in proving its claims that DR 1-103(C) was violated, in part relied upon events occurring after the accused's suspension in July 1986.

Testimony from the accused suggests that, because he was suspended from the practice of law for failure to pay PLF assessment and dues, and "did not expect to seek reinstatement," he in some way hoped that this would avoid disciplinary sanctions. The trial panel did not agree, nor do we.

In *In re Coe*, 302 Or 553, 557, 559, 731 P2d 1028 (1986), we noted this court's "power to disbar, suspend or reprimand 'members of the bar' under ORS 9.527" and 9.260, and held that even though the accused was suspended from

---

[2] It is not necessary to summarize the evidence. The testimony was conflicting in a number of important respects. We do not find, by clear and convincing evidence, that the accused violated DR 6-101(B).

"membership in the bar," this court had the "power to entertain charges when filed during the period of suspension" with respect to matters arising prior to the resignation or suspension of the lawyer. This case presents a slightly different question in that some of the accused's alleged misconduct relating to DR 1-103(C) occurred after the suspensions in July 1986.

Under *In re Coe, supra,* there is no doubt that this court has authority to conduct disciplinary proceedings concerning a lawyer during a period of suspension. The question is whether this authority includes the power to discipline the lawyer for conduct that occurred after the suspension but which related to the investigation of alleged misconduct that occurred before the suspension. Otherwise stated, the issue is: Does a lawyer continue to have ethical obligations under DR 1-103(C) during a period of suspension?

Most jurisdictions, including Oregon, have specific rules concerning a lawyer's conduct after suspension. *See* Wolfram, Modern Legal Ethics 130-31 (1986). BR 6.3 specifically delineates the responsibility of a disciplined lawyer upon suspension or disbarment.[3] Although this rule mainly

---

[3] BR 6.3 provides:

"(a) *Responsibilities:* It shall be the duty of an accused who has been disbarred or suspended or an attorney who has been involuntarily transferred to an inactive membership status to take immediately, as of the effective date of his or her disbarment, suspension or transfer to inactive membership status, reasonable steps to avoid foreseeable prejudice to the rights of his or her clients, including the giving of notice of disbarment or suspension and the term and reasons therefor to his or her clients, and to further deliver to clients or the clients' substituted attorney, all papers and property to which the clients are entitled. A disbarred or suspended attorney, or an attorney involuntarily transferred to inactive membership status, shall further comply with all applicable laws and disciplinary rules related to or directly pertaining to the withdrawal of an attorney as a result of disbarment or suspension in order to ensure the protection of his or her clients' interests and the interests of the public.

"(b) *Attorney to Discontinue Practice.* A disbarred or suspended attorney, or an attorney involuntarily transferred to inactive membership status, shall not accept any new retainer, give any legal advice, or act as the attorney for another in a pending case or legal matter of any nature after the effective date of his or her disbarment, suspension, or transfer to inactive membership status. This rule shall not preclude a disbarred or suspended attorney, or an attorney involuntarily transferred to inactive membership status, from providing information on the facts of a case and its status to a succeeding attorney, and such information shall be provided on request.

"(c) *Contempt.* Disciplinary Counsel may petition the Supreme Court to hold a disbarred or suspended attorney or an attorney involuntarily transferred to inactive membership status in contempt for failing to comply with the provisions of BR 6.3(a) or (b). The court may order the attorney to appear and show cause, if he or she has any, why the attorney should not be held in contempt of court and sanctioned accordingly."

concerns the steps a suspended or disbarred lawyer must take to protect the interests of his or her clients, it illustrates that this court possesses supervisory powers over suspended lawyers during the period of suspension and that suspended lawyers still have ethical obligations, the violation of which may lead to further sanctions.

■      A lawyer cannot, by resignation, avoid discipline for charges pending at the time of the resignation. *In re Coe, supra.* Neither can a lawyer, by resigning, avoid the duty to cooperate in the investigation of charges against him. The record is replete with evidence of "good cause" for the investigation of the charges made against the accused. Of course, the lawyer's responsibility to cooperate does not depend on the way the substantive complaints as to his conduct are resolved. Once a complaint is made and an inquiry commenced, the lawyer's obligation to cooperate with the inquiry stands on its own. So it is that a lawyer properly may be found— as was the lawyer in this case — not guilty of the original matters, but guilty of failing to cooperate in the investigation. The corollary DR 1-103(C) responsibility of a lawyer to "respond fully and truthfully to inquiries from * * * other authority empowered to investigate [claims of ethical violations]" is not less important than a lawyer's other responsibilities under the disciplinary rules. It follows that a lawyer has the obligation to cooperate with the Bar in the investigation of ethical violations, even during a period of suspension. We hold that DR 1-103(C) is applicable to the accused even as to those events occurring after suspension.

We therefore consider the third and fourth causes. The evidence of violation of DR 1-103(C) is clear and convincing. Here, too, we adopt the trial panel's findings as our own, and conclude that the accused is guilty of violating DR 1-103(C).

■      We turn to the question of sanction. The accused was before this court in 1983, charged with neglecting matters entrusted to him, with handling matters without adequate preparation, and with intentionally failing to carry out a contract of employment and intentionally prejudicing or damaging his client, in violation of disciplinary rules then numbered DR 6-101 and DR 7-101. We found him "guilty of neglecting legal matters entrusted to him under DR 6-101(A)(3)" and

"not guilty of the other violations" and imposed a public reprimand. *In re Hereford,* 295 Or 604, 616, 668 P2d 1217 (1983).

In the case before us, the trial panel considered the prior disciplinary matter and imposed this sanction:

"Appropriately the panel members were not made aware of the Accused's former violation of the Code of Responsibility (*In re Hereford,* 295 Or 604 (1983)) until after it had made the findings and conclusions above. Bar counsel presented a recommendation made part of the record as Exhibit #14. Bar counsel noted that the prior violation incident gave the Accused both warning and knowledge of the disciplinary process, as an aggravating factor.

"* * * * *

"* * * Accordingly, it is the sanction imposed by this trial panel that the Accused G. Brock Hereford be suspended for two years from the practice of law, with all but ninety (90) days of that suspension stayed, subject to the Accused's compliance with probationary terms for a period of two years.

"The term of the Accused's probation shall begin from the day the Accused's actual 90 day suspension expires. The imposed suspension shall not begin until the Accused has sought and obtained reinstatement to the Oregon State Bar regarding his current financial suspension. The terms of probation shall be:

"(1)   The Accused shall receive professional office practice and management counseling acceptable to, and under terms determined by, the State Chairperson of the Disciplinary Board. Such assistance shall be paid for by the Accused.

"(2)   The Accused shall take and successfully pass the professional responsibility examination administered by the Oregon State Board of Bar Examiners by no later than six months after the date he is reinstated to active membership in the Oregon State Bar following his 90 day suspension.

"(3)   The Accused shall not violate any provision of the Oregon State Bar's Code of Professional Responsibility or the State Bar Act during the term of his probation.

"(4)   The Bar shall have the authority to report, with notice to the Accused, to the Oregon Supreme Court the Accused's alleged noncompliance with any provision of the foregoing terms of probation. The Oregon Supreme Court, upon receipt of any such report from the Bar and any response the Accused may file with the court, may take summary action to impose any or all of the stayed portion of the Accused's

suspension upon finding the Accused has failed to comply with any term of probation."

We in part accept the recommendation of the trial panel. Were this the accused's first misconduct, a reprimand would be an appropriate sanction. But this is not the accused's "first offense."[4] A suspension therefore is appropriate. We do not, however, place him on probation.

The trial panel's probationary requirements suggest that it was critical of the accused's conduct relating to the first and second charges, even though it found him not guilty of those charges of misconduct. Even though we might share that view, in light of the not guilty findings on those charges, the probationary terms strike us as being an inappropriate sanction on a violation of the third and fourth charges. We therefore impose no probationary conditions.

Accordingly, G. Brock Hereford is suspended from the practice of law for 126 days. The imposed 126-day suspension shall not begin until the accused has sought and obtained reinstatement to the Oregon State Bar regarding his current financial suspensions.

Costs to the Oregon State Bar.

---

[4] Section 9.2 of the American Bar Association Standards for Imposing Lawyer Sanctions (1986) lists ten factors which may be considered in increasing the degree of discipline to be imposed, including "(a) prior disciplinary offenses."